PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-2965
No. 10-3107

_____

LEAP SYSTEMS, INC.

v.

MONEYTRAX, INC.; NORMAN BAKER

TODD LANGFORD (Intervenor in D.C.)


Todd Langford, Appellant in 10-2965

Leap Systems, Inc., Appellant in 10-3107

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 05-cv-01521)
District Judge:  Honorable Freda L. Wolfson

_____

Submitted Under Third Circuit LAR 34.1(a)
February 17, 2011

Before: SLOVITER and HARDIMAN, *Circuit Judges* and JONES, II,[*] *District Judge*.

(Filed: March 15, 2011)

Walter J. Fleischer, Jr.
Heather M. Hughes
Melissa L. Klipp
Drinker, Biddle & Reath
500 Campus Drive
4th Floor
Florham Park, NJ 07932-0000
*Attorneys for Appellee in 10-2965/Cross Appellant in 10-3107*

Jeffrey D. Ullman
Ullman, Furhman, Broeman & Platt
89 Headquarters Plaza
North Tower, 12th Floor
Morristown, NJ 07960-0000
*Attorney for Appellant in 10-2965/Cross Appellee in 10-3107*

---

OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

---

[*]The Honorable C. Darnell Jones, II, District Judge for the United States District Court for the Eastern District of

2

Petitioner Todd Langford appeals the District Court's order denying his motion to unseal portions of a judicial record containing the terms of a confidential settlement agreement. We will affirm.

I

This action began in 2005, when LEAP Systems, Inc. (LEAP), an insurance licensor, sued Norman Baker, a licensee affiliated with the company, and Baker's new employer, MoneyTrax, Inc. (MoneyTrax). LEAP sought damages for, *inter alia*, misappropriations of proprietary and confidential information, breach of contract, and breach of fiduciary duty. The District Court held a settlement conference on March 25, 2008, at which the parties reached two separate settlement agreements, one between LEAP and Baker, and the other between LEAP and MoneyTrax. These agreements settled all outstanding disputes among the parties.

To ensure that the settlement agreements "would not fall apart as soon as the parties left the courthouse," Baker's attorney asked to read into the record the terms of the agreements. At approximately 6:30 that evening, after all the court reporters had left for the day, District Judge Freda Wolfson brought the parties to the courtroom of Magistrate Judge Tonianne Bongiovanni, which was equipped with audio recording capabilities. Although Judge Wolfson stated a number of times that the terms were being placed "on the record," she ensured the parties that she would not file a transcript of the proceeding and suggested that no confidential terms be included in the parties' proposed

Pennsylvania, sitting by designation.

3

order to dismiss. When the parties inquired as to whether the transcript from the proceeding would be sealed, Judge Wolfson explained that because the proceeding was "not being transcribed as part of a court document," there would be no reason to seal its contents.

On April 4, 2008, the District Court dismissed the action with prejudice, "subject to the terms, conditions and provisions" of the parties' settlement agreements. The District Court expressly retained jurisdiction to enforce the parties' agreements, and ordered that the "terms of the Agreement[s] placed on the record on March 25, 2008 . . . not be made public and kept confidential until the Court has the opportunity to review a formal motion to seal." *Leap Sys. v. Moneytrax, Inc.*, No. 05-1521 (D. N.J. April 4, 2008) (order dismissing with prejudice). One week after the case was dismissed, LEAP filed a motion to seal pursuant to New Jersey District Court Local Civil Rule 5.3.[1] LEAP's attorney, Melissa Klipp, filed a declaration in conjunction with that motion, in which she averred that portions of the March 25, 2008 transcript contained "sensitive business information." She also claimed that "[d]isclosure . . . would render LEAP at a tactical disadvantage," and that "one of LEAP's primary competitors

---

[1] Local Rule 5.3 states, in relevant, part:
Any motion to seal or otherwise restrict public access shall be available for review by the public. The motion papers shall describe (a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available.

4

has already made direct requests to the Court seeking the information on the tape recording." Sealing those portions of the transcript containing confidential proprietary information, Klipp declared, "would be the least restrictive means of protecting LEAP against imminent harm." Neither Baker nor MoneyTrax opposed LEAP's motion to seal.

On May 9, 2008, the District Court entered an order sealing those portions of the transcript memorializing the terms of the parties' settlement agreements. Recognizing that "the right to inspect and copy judicial records is not absolute," the District Court considered whether LEAP had satisfied its burden under Local Rule 5.3 of showing that a seal was necessary to protect its legitimate interests. *Leap*, No. 05-1521 (D.N.J. May 9, 2008) (order to seal) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978)). The Court found that LEAP's interest in maintaining the confidentiality of sensitive business information was legitimate, and that LEAP was reasonably concerned that competitors would use this information to its disadvantage. It thus concluded that LEAP had met its burden, and ordered the record sealed. The District Court also noted that the transcript was "only meant to serve as a reference for the parties when they drafted the actual agreements" and was not a part of the judicial record. *Id.* Nevertheless, on May 27, 2008, the transcript was filed with the Clerk of Court for the District of New Jersey.

Within a month, the parties had resumed litigation, and the District Court entered three consecutive show-cause orders directing LEAP to comply with the terms of its settlement agreement with Baker. In response, LEAP claimed that Baker had misappropriated confidential proprietary information and used it to develop a "software calculator" with his friend and

colleague Todd Langford. Although LEAP eventually settled its dispute with Baker, it continued to pursue its misappropriation claim against Langford in state court. Langford in turn filed a motion to intervene in the District Court proceeding and to unseal, under the "right of access" doctrine, portions of the March 25, 2008 transcript, which he claims are essential to establishing his defense in state court. The Magistrate Judge granted Langford's motion to intervene, but denied him access to the sealed portions of the transcript. Citing the District Court's order of May 9, 2008, the Magistrate Judge found that the transcript was not a "judicial record," and thus "[n]either Langford nor any other member of the public has a legitimate right" to access it. *Leap*, No. 05-1521 (D.N.J. Sept. 24, 2009) (letter order from magistrate judge).

The District Court affirmed the Magistrate Judge's recommendation but rejected its finding that the transcript was not a judicial record. By placing the terms of the settlement agreements on the record, the Court explained, the parties had transformed a private contract into a public document. *Leap*, 2010 U.S. Dist. LEXIS 53167, *19-20 (D.N.J. Sept. 24, 2009) (citing *Jackson v. Del. River & Bay Auth.*, 224 F. Supp. 2d 834, 839 (D.N.J. 2002)). The Court also noted that a "presumptive right of access" arose when the document was filed with the Clerk of Court on May 27, 2008. *Id.* at *20 (citing *Leucadia v. Applied Extrusion Techs., Inc.*, 998 F.3d 157, 161-62 (3d Cir. 1993)).

Nevertheless, the District Court found that LEAP's interest in preventing competitors from using the proprietary information in the transcript to "unfairly compete," coupled with its reliance on the Court's assurance of confidentiality, outweighed Langford's personal interest in litigating his claim

6

in state court. *Id.* at \*22-30. Accordingly, the Court denied Langford's motion to unseal those portions of the transcript containing the terms of the settlement agreements. Langford filed this timely appeal.

## II

We have jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291, and review its denial of Langford's motion to unseal for abuse of discretion. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 783-84 (3d Cir. 1994). We exercise plenary review over the District Court's legal determination regarding the definition and scope of a "judicial record." *Id.*

## A

Langford sought to unseal portions of the March 25, 2008 transcript pursuant to his common law right of access to judicial proceedings and judicial records, a right which we have held is "beyond dispute." *Littlejohn v. Bic Corp.*, 851 F.2d 673, 677-78 (3d Cir. 1988). The common law right of access antedates the Constitution, and its purpose is to "promote[] public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." *Id.* Hence, a "strong presumption" in favor of accessibility attaches to almost all documents created in the course of civil proceedings. *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984) ("Public access to civil trials, no less than criminal trials, plays an important role in the participation and the free discussion of governmental affairs."); *United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984) ("The common law right of access is not limited to evidence, but rather encompasses all

7

judicial records and documents. It includes transcripts, evidence, pleadings, and other materials submitted by litigants . . . ") (citations and quotation marks omitted).

An exception is made, however, for documents which have not been "filed with, . . . interpreted or enforced by the district court." *Pansy*, 23 F.3d at 781. For instance, settlement agreements reached without court assistance or intervention will not be treated as "judicial records" for purposes of the "right of access" doctrine. *Enprotech Corp. v. Renda*, 983 F.2d 17, 20-21 (3d Cir. 1993); *cf.*, *Bank of Am. & Nat'l Trust v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 345 (3d Cir. 1986) ("Once a settlement is filed in the district court, it becomes a judicial record, and subject to the access accorded such records."). Moreover, a confidential settlement agreement will not be transformed into a "judicial record" simply because the court seals its contents from public view. *Pansy*, 23 F.3d at 781.

The District Court initially stated that the sealed document was not a judicial record. Upon closer review, however, the Court determined that the transcript, which had been recorded in open court, transcribed and filed with the Clerk of Court, and enforced in subsequent litigations, must be regarded as a judicial document for purposes of determining the public's right of access. We agree.

In *Rittenhouse*, we held that "the court's approval of a settlement or action on a motion are matters which the public has the right to know about and evaluate." 800 F.2d at 344. Thus, "settlement documents can become part of the public component of a trial" under either of two circumstances: (1) "when a settlement is filed with a district court;" and (2) "when the parties seek interpretative assistance from the court or

8

otherwise move to enforce a settlement provision." *See Enprotech*, 983 F.2d at 20 (citing *Rittenhouse*, 800 F.2d at 343-44).

Both circumstances are present in this case. The transcript was filed with the Clerk of Court on May 27, 2008, and listed as Document No. 54 on the District Court's docket.[2] In addition, the parties specifically requested at the March 25, 2008 proceeding that the District Court retain jurisdiction to interpret and enforce the terms of the settlement agreements. *See Rittenhouse*, 800 F.2d at 345 ("Having undertaken to utilize the judicial process to interpret the settlement and to enforce it, the parties are no longer entitled to invoke the confidentiality ordinarily accorded settlement agreements."). In its order of dismissal, the District Court specifically directed compliance with the "terms, conditions and provisions" of the parties' agreements. *Cf. Enprotech*, 983 F.2d at 21 (finding no right of access to a settlement agreement where the court order referred to "the parties' stipulation of dismissal and not their compliance with the terms and conditions of . . . [their] settlement agreement"). Although the MoneyTrax-LEAP agreement has

---

[2] LEAP claims a copy of the transcript was filed with the Clerk by mistake and has since been removed from the docket. In *Littlejohn*, we held that discovery documents which were once filed with the court lost their status as "judicial records" when they were returned to counsel after the case was dismissed. 851 F.2d at 682. Unlike in *Littlejohn*, here, the facts regarding when and where the document was filed remain in dispute. We find no clear error, however, in the District Court's reliance on docket entry number 54, which states that the transcript of the March 25, 2008 proceedings "is maintained in paper format on file in the Clerk's Office."

yet to be revisited, the District Court has demonstrated its willingness to enforce the Baker-LEAP agreement on several occasions.

Lastly, we are persuaded by the Seventh Circuit's reasoning in *Jessup v. Luther*, 277 F.3d 926 (7th Cir. 2002), that "the public has an interest in knowing what terms of settlement a federal judge would approve and perhaps therefore nudge the parties to agree to." *Id.* at 929. Judges play an essential role in the settlement process, as "litigants may negotiate with more confidence if they know that a neutral third party, namely the judge presiding over their case, will look over the settlement agreement and note any ambiguities or other flaws in it that might frustrate or complicate its enforcement should the parties ever come to blows over its meaning." *Id.* Indeed, the facts of this case perfectly illustrate the point. Before Judge Wolfson's intervention, the parties had engaged in two years of "bitterly contested" pre-trial practice, followed by a year of mediation. "Only after [the District] Court's intervention and assistance[] did the parties finally agree[] to a set of specific terms." *Leap*, 2010 U.S. Dist. LEXIS 53167 at *19. Although the District Court's involvement in the negotiation process may not by itself have transformed the confidential settlement agreements into publicly-available judicial documents, it certainly weighs in favor of this outcome.

For these reasons, the District Court did not err when it held that the transcript is a judicial document subject to the common law "right of access" doctrine.

B

Although the right of access to judicial records is

10

"beyond dispute," it is not absolute. *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978). "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.* Thus, while we recognize a strong presumption in favor of public accessibility, we also permit the sealing of documents when justice so requires. However, "[t]he burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *In re Cendant Corp.*, 260 F.3d 183, 190 (3d Cir. 2001).

Langford claims the District Court abused its discretion in denying him the right to access a judicial record based on little more than LEAP's vague assertions that the transcript contains "secretive business information," and that disclosure would "render LEAP at a tactical disadvantage." We agree that LEAP's "[b]road allegations of harm, bereft of specific examples or articulated reasoning," are insufficient, on their own, to establish a strong interest in maintaining confidentiality. *In re Cendant Corp.*, 260 F.3d at 194. Nor can a district court "rely on the general interest in encouraging settlement" to justify the sealing of an agreement which the parties mistakenly believed would remain confidential. *Id.*; *see also Rittenhouse*, 800 F.2d at 346 ("[T]he generalized interest in encouraging settlements does not rise to the level of interests that we have recognized may outweigh the public's common law right of access.").

Here, however, the District Court's decision to deny Langford's motion was based on more than LEAP's broad assertions of financial injury and a generalized concern about discouraging settlement agreements. Rather, the District Court

specifically found that LEAP would not have entered into the settlement agreements *but for* the Court's assurance of confidentiality. *See Pansy*, 23 F.3d at 790 (finding that, in most cases, "settlements will be entered into . . . whether or not confidentiality can be maintained," but that a party's reliance on an order sealing a judicial document "should depend on the extent to which the order induced the party to allow discovery or to settle the case").

The record provides ample support for the District Court's finding. As the transcript reflects, LEAP's attorney asked the Court several times during the March 25, 2008 proceeding whether the recording would remain confidential. The Court assured the parties that the transcript would not be filed and that the terms of the agreements would not be disclosed in its order dismissing the case. When the parties asked whether the Court would seal the contents of the transcript, they were told that a sealing order would not be necessary to ensure the document's confidentiality. Under these circumstances, we find LEAP's reliance on the District Court's assurances of confidentiality entirely reasonable and sufficient to outweigh the public's common law right of access. *See also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) (holding that the details of a confidential settlement agreement disclosed during "a relatively informal conference relating to settlement," on the basis of the court's "assurances of confidentiality," warranted only a "weak" presumption of public access).

Having found LEAP's privacy interest significant, we now turn to the public's interest in disclosure. "Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and

12

safety, and when the sharing of information among litigants would promote fairness and efficiency." *Pansy*, 23 F.3d at 777 (internal citations omitted). Moreover, we are more likely to require disclosure when "a party benefitting from the order of confidentiality is a public entity or official," or when the judicial record "involves matters of legitimate public concern." *Id.* at 778, 788. The District Court considered these factors, and found the public's interest in disclosure minimal. The parties are private entities, their dispute has no impact on the safety and health of the public, and their settlement agreements demonstrate a clear intent to maintain confidentiality.

Weighing these factors against LEAP's strong privacy interest, the District Court held that the presumption in favor of public accessibility had been rebutted. This finding was not an abuse of discretion. Accordingly, we will affirm the order of the District Court.

13