**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PINE TELEPHONE COMPANY, INC., an
Oklahoma corporation; PINE CELLULAR
PHONES, INC., an Oklahoma corporation,

     Plaintiffs - Appellants,

v.

ALCATEL-LUCENT USA INC., a
Delaware corporation, f/k/a Alcatel USA
Marketing, Inc.,

     Defendant - Appellee.

No. 14-7012
(D.C. No. 6:11-CV-00353-JHP)
(E.D. Oklahoma)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **SEYMOUR**, and **McHUGH**, Circuit Judges.
_____

## I.  INTRODUCTION

Plaintiffs Pine Telephone Company, Inc. and Pine Cellular Phones, Inc. appeal (1)

the district court's grant of summary judgment in favor of defendant Alcatel-Lucent USA

Inc. on their breach of contract, breach of warranty, and fraud claims; (2) the district

court's denial of leave to amend; and (3) the district court's exclusion of their expert

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of Tenth Circuit Rule 32.1.

witness. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

## II. BACKGROUND

### A. *Factual History*

**1.     The Supply Agreement**

Pine Telephone Company, Inc. and Pine Cellular Phones, Inc. (collectively, Pine) are Oklahoma corporations engaged in the business of providing telecommunications services in Southeast Oklahoma. Alcatel-Lucent USA Inc. (Alcatel) is a Delaware subsidiary of a French-based corporation, Alcatel-Lucent. Alcatel sells telephone communications equipment and services. In May 2005, Pine and Alcatel entered into a Supply Agreement, which served as a master contract for the parties' ongoing seller-purchaser relationship. Pursuant to the Supply Agreement, Pine could submit purchase orders to Alcatel, which would be treated as offers. If Alcatel accepted the offer, Alcatel would be obligated to provide the relevant equipment, software, or services, subject to the terms of the Supply Agreement.

Under the Supply Agreement, Alcatel expressly warranted that, for a period of twelve months, any equipment or software Pine purchased from Alcatel "shall, under normal use and service, be free from defects in material and workmanship, and . . . shall materially conform to Alcatel's specifications thereof in effect on the date of the shipment." If the purchased equipment was not as warranted, "Alcatel shall repair or replace the Equipment." But, if "after the exercise of commercially reasonable efforts," the equipment could not be repaired or replaced, Alcatel could "in its sole discretion,

2

refund to the Purchaser the Purchase Price of the Product, less a reasonable adjustment for beneficial use." The warranty provision also includes a disclaimer, set forth in bold capital letters, stating the Agreement's express warranties constitute purchaser's sole remedy under the Agreement and disclaiming any implied warranties, including the implied warranties for merchantability or fitness for any intended or particular purpose. The liability section of the Supply Agreement further disclaims liability for all consequential damages, including lost revenues and profits. And the Supply Agreement contains a choice of law provision, which indicates it is governed by the laws of Texas.

**2.     The 3G Network**

In 2008, Pine expressed interest in purchasing from Alcatel equipment and services to deploy a Universal Mobile Telecommunications System (UMTS), also known as a 3G cellular network. Generally speaking, a 3G network consists of two basic segments: (1) a "core" network, which includes several pieces of equipment usually housed in or near the cellular office, and (2) a UMTS terrestrial radio access network (UTRAN), which includes the user equipment and the Radio Access Network (comprising radio towers, Node Bs, and the Radio Network Controller (RNC)).

In November 2008, Alcatel provided an initial proposal to Pine for a "turnkey" solution (the Proposal), under which Alcatel would provide all equipment and services needed to deploy a complete 3G network. The Proposal quoted a purchase price of $2.3 million for all equipment and of $986,778 for related services. Alcatel also prepared a Statement of Work (SOW), which described all of the services Alcatel would provide to deploy the 3G network. The SOW was to be governed by the terms of the Supply

3

Agreement, but in the event of a conflict between the SOW and the Supply Agreement, the SOW states "the terms of this SOW shall prevail with respect to the subject matter contained herein."

That same month, Pine and Alcatel representatives met in Jackson Hole, Wyoming, where Alcatel had deployed a 3G network, known as the Edge Network. Alcatel demonstrated the capacity of the Edge Network and allegedly told Pine it could expect even better performance if it were to purchase a 3G network from Alcatel. Pine contends Alcatel surreptitiously performed advanced testing of the Edge Network so that the demonstration would be uncharacteristically trouble-free.

On December 15, 2008, Pine submitted to Alcatel thirteen purchase orders: eleven for the purchase of equipment for the 3G network, totaling approximately $2.29 million, and two for engineering, installation, integration, and project management services, totaling $935,811. A few months later, Pine submitted an additional purchase order in the amount of $191,515 for a limited technical support package, which provided for the return and repair of equipment with a goal, but not an obligation, of replacing the equipment within sixty days. These purchase orders and a few subsequent orders for additional equipment totaled approximately $3.7 million. Collectively, the purchase orders included all equipment and services identified in the turnkey solution, with the exception that Pine opted to perform its own (1) installation and commission of the Node Bs, (2) site survey, and (3) radio frequency design.[1] Pine's decision to perform these

---

[1] Pine also initially planned to use its existing aggregation router, but ultimately purchased a new one from Alcatel.

tasks saved it $68,967—less than 2% of the $3.7 million proposed "turnkey" price. Several months after Pine had submitted all the purchase orders, Alcatel requested that Pine sign the SOW.

### 3. The Unsuccessful Deployment of the 3G Network

The deployment of the 3G network did not go as planned. Alcatel established a target "equipment operational" date of sometime during the second quarter of 2009, but by early 2011, Pine still did not have an operational 3G network. The parties dispute the cause of the deployment problems. Alcatel points to Pine's decision to self-install the cell cite equipment, Pine's alleged under-staffing, and a storm that damaged some of the equipment. Pine, on the other hand, contends nonconformities in Alcatel's equipment and Alcatel's failure to render services as promised caused the problems. Pine notes that, despite numerous attempts to repair and replace equipment over nearly two years of troubleshooting, Alcatel never delivered a functioning 3G network. Pine also relies on internal Alcatel emails it alleges acknowledge Alcatel's responsibility.[2]

---

[2] For example, Pine relies on a March 9, 2009, internal Alcatel email discussing the issues with the Pine network and stating, "something is VERY wrong with our configuration this needs to be corrected ASAP so we do not lose more credibility." Similarly, a January 2011 email from an Alcatel engineer indicated that the Pine network was not yet "turned up" and expressed his belief that some of the reasons were Alcatel's fault, including "failing hardware, no [Alcatel] lab, limited product knowledge, etc.," and some were the fault of Pine, including "no [radio frequency] design, delays in timeline, etc." The same email indicated that all of Alcatel's expertise was overseas and thus not available to provide on-site support, and opined that Alcatel had been "fumbling around this for over 12 months" and kept "floundering." An Alcatel customer service representative emailed that "the frustration from Pine continues" and that "[t]he biggest problem is that we don't show up and fix anything!" The customer representative concluded, "If we don't commit today to get someone knowledgeable out there . . . we will lose [Pine's business] and our reputation will take a huge hit."

On January 12, 2011, over two years after the parties entered into their agreement (the 2008 Agreement), Pine sent Alcatel a letter stating it was rejecting the equipment and services it had purchased. In the letter, Pine expressed its position that Alcatel's equipment failed to function as specified and that Alcatel's promises to correct the problems remained unfulfilled, even after Pine had provided a reasonable time to cure. Pine therefore rejected "the equipment, engineering, self-installation, installation, integration, technical support, program management, optimization and migration in whole."

## B.   Procedural History

In September 2011, Pine filed suit against Alcatel in Oklahoma state court, and Alcatel removed the case to the Federal District Court for the Eastern District of Oklahoma. In its First Amended Complaint, Pine alleged Alcatel breached the parties' 2008 Agreement by supplying defective equipment and failing to render adequate installation services, and that any and all warranty limitations were void because Alcatel was unable to repair or replace the equipment. In addition, Pine alleged Alcatel made false and misleading representations regarding its ability to deploy a 3G network, thereby fraudulently inducing Pine to enter into the 2008 Agreement. Pine requested damages in the form of repayment of the over $3.7 million purchase price, lost profits, and punitive damages, in addition to costs and fees. Pine also requested a declaration that it owed no further amounts to Alcatel.

Alcatel moved for summary judgment on all of Pine's claims. Pine opposed the motion and simultaneously moved for leave to amend its First Amended Complaint,

6

including as an attachment a Proposed Second Amended Complaint. Acknowledging the motion was untimely, Pine represented that the Second Amended Complaint was intended to cure any potential deficiencies in the First Amended Complaint, but did not add any new theories for relief.

The district court granted Alcatel's summary judgment motion. Applying Oklahoma law to Pine's fraud claims, the court held Pine had not satisfied its burden of bringing forth evidence of each element of fraudulent inducement. And the district court concluded Pine's postpurchase and constructive fraud claims were not pled with particularity as required by Federal Rule of Civil Procedure 9(b).

The district court also granted summary judgment on Pine's breach of contract and breach of warranty claims. Applying Texas law as required by the Supply Agreement, the court ruled that proof of nonconformity is an essential element of both breach of contract and breach of warranty and that Pine had the burden of proving the equipment failed to conform to the parties' 2008 Agreement. The district court explicitly rejected Pine's argument that it contracted to purchase a functional 3G network from Alcatel. Therefore it ruled Pine was required to prove defect as to each piece of equipment purchased. The district court held Pine had failed to come forward with evidence sufficient to create a question of fact as to whether Alcatel's equipment was defective.

In particular, the district court rejected the report of Pine's proffered expert, Jonathan Reeves, because Pine had not timely identified him as an expert, his report failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B), and his opinions were purely conclusory. The court also determined that neither the deposition testimony of

Pine employees nor the internal Alcatel emails provided evidence of product defect. It further ruled that even if Pine could establish breach of contract or warranty, its sole remedy under the Supply Agreement would be repair or replacement, and that even if the repair or replacement remedy had failed of its essential purpose, Pine had waived consequential damages.

In the same memorandum decision granting summary judgment in favor of Alcatel, the district court denied Pine's motion for leave to file a second amended complaint. The court ruled the motion was untimely and that granting it would be futile because Pine conceded it had not added any new claims and none of Pine's existing claims raised a genuine issue of fact for trial. Pine appeals the district court's summary judgment order.

## III.    DISCUSSION

Before addressing Pine's challenges to the district court's order, we pause to address three outstanding motions. The first is Pine's motion for leave to file its brief and appendix under seal, and the second is a related request from Alcatel that volume II of its supplemental appendix remain under seal. The third is Pine's motion to supplement the appendix on appeal.

As to the first motion, Pine initially requested that its brief and appendix be filed under seal consistent with a protective order entered in the district court. But after we issued an order to show cause why the documents should not be made public, Pine retreated from its position and, instead, challenged the propriety of the district court's protective order. Pine contends its brief and appendix contain no confidential trade

8

information and therefore need not be filed under seal. Conversely, Alcatel argues that Pine's brief and all but five documents in Pine's appendix contain sensitive commercial information regarding its network design and sales figures. Alcatel likewise argues in the second motion before us that volume II of its supplemental appendix should remain under seal because it contains confidential contractual, design, and sales information.

In determining whether portions of a judicial record should be sealed, we begin with the presumption "that the public has a common-law right of access to judicial records." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011). *See also JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs.*, 754 F.3d 824, 826 (10th Cir. 2014) (noting that courts "have long recognized a common-law right of access to judicial records") (internal quotation marks omitted). "The party seeking to overcome the presumption of public access to the documents bears the burden of showing some significant interest that outweighs the presumption." *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (internal quotation marks omitted). In civil litigation, a showing that the records contain trade secrets may rebut this presumption. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). Here, Alcatel seeks to seal Pine's appendix in its entirety and volume II of its supplemental appendix on the basis that they contain confidential trade secret information. But this overly broad request is "bereft of specific examples" indicating which documents contain the allegedly confidential information and is therefore insufficient to overcome the presumption against sealing. *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222 (3d Cir. 2011) (internal quotation marks omitted).

Therefore, with this decision we issue a separate order to show cause, instructing Alcatel to identify each portion of the briefs or page of the appendices it contends should be sealed and to indicate why its interest in sealing it overcomes the presumption in favor of public access. We reserve judgment on this matter pending resolution of the order to show cause.

The third motion before us is Pine's motion to supplement its appendix. Pine filed this motion in response to Alcatel's request that we summarily affirm the district court due to Pine's failure to submit an adequate record for review. We decline to summarily affirm and we allow Pine's appendix to be supplemented by the documents included in Alcatel's supplemental appendix. *See, e.g.*, *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (reaching the merits of an appeal despite appellant's "failure to meet basic standards relating to the record on appeal" where appellee's supplemental appendix cured any deficiencies). We now proceed to the merits of Pine's appeal.

Pine argues it presented sufficient evidence to survive summary judgment on its claims that (1) it purchased a functional 3G network from Alcatel, instead of just parts, and therefore Alcatel breached the 2008 Agreement by failing to deliver a network; (2) Alcatel breached certain express warranties; (3) the limited warranties and remedies provisions of the contract failed of their essential purpose, and therefore Pine is entitled to monetary damages; and (4) Alcatel fraudulently induced Pine to enter into the 2008 Agreement and also committed constructive fraud. Pine also challenges the district court's denial of its motion for leave to amend and exclusion of its expert.

10

### A. *Summary Judgment*

Although Pine challenges numerous components of the district court's summary judgment ruling, its arguments on appeal fit within two general categories: those relating to Pine's breach of contract and warranty claims and those relating to its fraud claims. Texas law governs Pine's contract and warranty claims under the choice of law provision in the Supply Agreement. Pine's fraud claims do not arise out of the Supply Agreement, so we look to the forum state's choice of law principles to determine which law governs. *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999). Oklahoma applies the most-significant-relationship test, and under that test, Oklahoma law governs because Alcatel's allegedly fraudulent conduct and Pine's alleged reliance on that conduct took place in Oklahoma. *See id.* at 1103–04. In interpreting the relevant laws of these states, "we are not required to follow the dictates of an intermediate state appellate court, [but] we may view such a decision as persuasive as to how the state supreme court might rule." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 n.1 (10th Cir. 2013) (internal quotation marks omitted).

We review the district court's summary judgment decision de novo to determine whether there are any genuine issues for trial and, if not, whether Alcatel was entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Mid-Continent Cas. Co. v. True Oil Co.*, 767 F.3d 1000, 1004 (10th Cir. 2014) (describing the summary judgment standard). "In making such a determination, we resolve factual disputes and draw reasonable inferences in favor of the nonmoving party." *Mid-Continent Cas.*, 767 F.3d at 1004. At summary judgment, the moving party carries the initial burden of demonstrating

a lack of a genuine issue of material fact, which it may satisfy by showing "an absence of evidence to support the nonmoving party's case." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party meets its burden, "the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (internal quotation marks omitted). A nonmoving party's failure to prove an essential element of its case "renders all other facts immaterial." *Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) (internal quotation marks omitted).

## 1. Contract and Warranty Claims

Pine argues the district court erred in construing the 2008 Agreement as a contract merely for pieces of equipment. Instead, Pine asserts a reasonable jury could find Pine purchased an operational 3G network from Alcatel and Alcatel breached the 2008 Agreement by failing to deliver a functional network. Pine also contends Alcatel breached certain express warranties because, even after repairing or replacing numerous pieces of equipment, Alcatel never deployed a functional network. Finally, Pine claims it presented sufficient evidence to survive summary judgment on its claim that the limited warranty and limited remedy provisions failed of their essential purpose, thereby permitting Pine to claim breach of the implied warranties of merchantability and fitness for a particular purpose and to recover consequential damages. Before reaching these

12

arguments, we address Alcatel's contention that Pine failed to preserve some of its claims.

> *a. Pine preserved its breach of contract and unconscionability of the limited remedy claims but failed to preserve its breach of express warranty claim.*

Alcatel insists Pine has substantially changed its breach of contract and warranty claims and its challenge to the limited remedy provision on appeal. According to Alcatel, Pine's theories of breach of contract and warranty in the district court focused on defective equipment, whereas Pine's theory on appeal is that it purchased a functioning 3G network. Similarly, Alcatel argues Pine relies on a different basis for its challenge to the limited remedy provision on appeal than it did in the district court. Although Alcatel concedes the district court's summary judgment order addressed the arguments Pine raises on appeal, it contends we should not rely on the district court's ruling to conclude Pine preserved them.

Alcatel relies on *Tele-Communications, Inc. v. Commissioner*, where we refused to consider as unpreserved an argument the tax court briefly considered, based on three sentences of the IRS Commissioner's brief. 104 F.3d 1229, 1233–34 (10th Cir. 1997). We explained that even though the tax court ruled on the argument by "summarily reject[ing] this passing contention," the argument was not preserved because its "perfunctory presentation" had "deprived [the tax] court of the opportunity to analyze and rule on this issue now raised in detail for the first time on appeal." *Id.* at 1232, 1234. Alcatel argues that, like the IRS Commissioner's unpreserved argument in *Tele-*

*Communications*, Pine's terse discussion in the district court of its network and limited remedies theories is insufficient to preserve those issues for appeal.

The district court's order offers the best evidence of the court's understanding of the parties' arguments. The summary judgment order here thoroughly addressed and ruled on Pine's theory that it purchased a 3G network and Pine's claim that the Supply Agreement's limited remedy provisions failed of their essential purpose. Therefore, unlike the Tax Commissioner's "perfunctory presentation" of its argument before the tax court in *Tele-Communications*, which "deprived that court of the opportunity to analyze and rule on [the] issue," *id.* at 1234, Pine's breach of contract and limited remedy arguments were sufficiently articulated to allow the district court to thoughtfully consider and rule on them. And although Pine has more fully developed these arguments on appeal, it has not "change[d] to a new theory." *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 722 (10th Cir. 1993). We thus conclude Pine sufficiently preserved its breach of contract claim, including that it purchased an integrated network, and also preserved its unconscionability claim based on the failure of the limited remedies.

But we agree with Alcatel that Pine has substantially altered its breach of warranty claim on appeal. Specifically, Pine argues on appeal that Alcatel expressly warranted through the Proposal and through its demonstration of the Edge Network that it would deliver a functioning network. *See* Tex. Bus. & Com. Code § 2.313 (describing the ways in which a seller creates express warranties). But in the district court, Pine's breach of express warranty claim relied on the Supply Agreement's warranty that any equipment or software Pine purchased from Alcatel would be free from defect and would materially

14

conform to Alcatel's specifications. The district court's summary judgment order, which focused solely on the express warranties created in the Supply Agreement, reflects this choice of theories. Pine's breach of warranty claim thus suffers from two fatal errors. First, because Pine did not raise in the district court the theories it now relies on—specifically, that the Proposal and Edge Network demonstration created express warranties—it has forfeited these theories. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) ("[I]f the theory simply wasn't raised before the district court, we usually hold it forfeited."). Although we may "entertain forfeited theories on appeal," we will only do so if the party carries its burden of showing the district court plainly erred in not addressing the forfeited theories. *Id*. Pine has not argued plain error, and therefore its claim that Alcatel breached express warranties created in the Proposal and Edge Network demonstration fails. *See id.* at 1131 ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court."). Second, by not raising on appeal the argument it advanced in the district court—that Alcatel breached the Supply Agreement's express warranties—Pine has "intentionally relinquished or abandoned" this theory. *Id.* at 1127. We therefore "deem it waived and refuse to consider it." *Id.* Because Pine has either forfeited or waived its breach of express warranty theories, we affirm the district court's grant of summary judgment in favor of Alcatel on this issue[3] and proceed to the merits of Pine's breach of contract and limited remedy claims.

---

[3] Pine also failed to preserve its negligent performance of services claim and its argument that the failure of the Supply Agreement's limited remedy provisions renders

15

*b. Breach of contract*

Because Pine presented no direct evidence that the individual pieces of network equipment were defective, the district court held it failed to prove nonconformity, which the court determined was an essential element of Pine's breach of contract and breach of warranty claims. In reaching this result, the district court erred by misinterpreting the distinction between breach of contract and breach of warranty under Texas commercial law.

    i.   Breach of contract and breach of warranty are distinct under Texas law.

In Texas, "[B]reach of warranty and breach of contract are distinct causes of action with separate remedies." *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008). Specifically, under the Texas version of the Uniform Commercial Code (UCC), "[W]hen a party fails to deliver as promised, a breach of contract occurs. Conversely, when a seller delivers non-conforming goods, it is a breach of warranty." *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 890 (Tex. App. 1996), writ denied (Feb. 13, 1998) (citing *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991)). And under the Texas UCC, "breach of contract damages are available for failure to perform, but not for delivery of non-conforming goods." *Id.*; *compare* Tex. Bus. & Com. Code § 2.711 (providing the damages available for failure to deliver goods),

---

the Supply Agreement's disclaimer of implied warranties of merchantability and fitness for a particular purpose unenforceable. Pine did not raise these arguments in the district court, and the district court did not address them. Pine has therefore forfeited them. *See Abernathy v. Wandes*, 713 F.3d 538, 551 (10th Cir. 2013), *cert. denied*, --- U.S. ----, 134 S. Ct. 1874 (2014).

16

*with id.* § 2.714 (providing the damages available when buyer accepts and later rejects goods that are nonconforming). The district court required proof of nonconformity on both the breach of contract and breach of warranty claims, but such proof was necessary only for the latter claim.

To survive summary judgment on its breach of contract claim, Pine must demonstrate a genuine issue regarding whether Alcatel delivered the good(s) promised under the 2008 Agreement. This determination hinges on whether the 2008 Agreement was one merely for individual pieces of equipment, which Alcatel delivered, or one for a functioning 3G network, which both parties agree was never deployed. We therefore now consider whether Pine presented sufficient evidence that it purchased a 3G network to survive summary judgment.

    ii.  <u>A genuine issue exists regarding the nature of the 2008 Agreement.</u>

The district court rejected Pine's argument that it purchased an entire network because Pine did not accept Alcatel's "turnkey" proposal and Pine's January 2011 rejection letter separately identified each piece of equipment. Although these facts provide some evidence on the issue, we are not convinced that, as a matter of law, they foreclose Pine's claim that Alcatel breached the 2008 Agreement by failing to provide a 3G network.

In ruling the 2008 Agreement was merely for parts, the district court apparently viewed the 2008 Agreement as consisting solely of the network purchase orders,[4] as

---

[4] More specifically, the district court seemed to consider only those purchase orders for network equipment, thereby ignoring the over $1 million of installation,

17

governed by the Supply Agreement. But Pine contends the Proposal and the SOW were also part of the 2008 Agreement and that these documents prove Alcatel's intent to sell and Pine's intent to purchase an integrated 3G network.

The Texas Supreme Court has held that "instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (footnotes omitted). The Texas court has further explained that "a court may determine, as a matter of law, that multiple documents comprise a written contract," and in some instances "courts may construe all the documents as if they were part of a single, unified instrument." *Id.* (footnote omitted). But where a material factual dispute exists regarding which documents constitute the parties' agreement, the dispute raises "a question of intent concerning contract formation," which demonstrates "a latent ambiguity that allows for the admission of parol evidence." *Farmers Ins. Exch. v. Leonard*, 125 S.W.3d 55, 65 (Tex. App. 2003) (citing *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W. 280, 282–83 (Tex. 1996). And a dispute regarding the intent of the parties is more properly resolved by the factfinder. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) (explaining that the intent of the parties to an ambiguous contract "is a question of fact for the jury"); *see also Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 169 F.3d 677, 679 (11th Cir. 1999) (reversing summary judgment and remanding to the

---

integration, project management, and technical support services Pine purchased under the 2008 Agreement.

district court where the court was "uncertain exactly which documents comprise the contract").

This case presents a factual dispute over whether Pine and Alcatel's 2008 Agreement consisted of multiple documents. Although the terms of the Supply Agreement generally govern any purchase orders Pine submitted to Alcatel, the SOW and Proposal were prepared specifically for the 2008 transaction. Alcatel delivered the SOW to Pine just ten days before Pine submitted the purchase orders, and the SOW explicitly provided that, in a conflict between the SOW and the Supply Agreement, the terms of the SOW govern. And even after Pine decided to perform a small part of the work described in the SOW, Alcatel requested that Pine sign the SOW. This evidence supports Pine's claim that both parties intended to proceed according to the SOW, despite it being slightly modified by Pine's decision to perform some self-installation.

A genuine dispute also exists as to whether Alcatel intended the terms of the Proposal to constitute part of the 2008 Agreement. Taking all inferences in favor of Pine as we must on summary judgment, internal Alcatel emails circulated on the date of purchase evince Alcatel's understanding that the Proposal governed the parties' 2008 Agreement. Specifically, an email to Alcatel account manager Allyson Raskin stated "we should somehow get the contract terms (i.e. proposal) solidified – to demonstrate what we've promised & what they get," to which Ms. Raskin replied, "I can update the proposal with this new quote – I don't think that the proposal has really changed." These emails support Pine's contention that it purchased a 3G network as set forth in the Proposal. They also support Pine's position that its decision to self-install tower site

19

equipment so minimally impacted the Proposal that neither party considered it significant. Thus, Pine presented sufficient evidence to raise a genuine issue of fact as to whether the SOW and Proposal constituted part of the 2008 Agreement.

Assuming the 2008 Agreement includes the SOW and Proposal, a reasonable interpretation of their language indicates Alcatel agreed to deliver Pine a functioning 3G network. Looking first to the language of the SOW, it expresses Alcatel's commitment to "provide[] Services for the PINE CELLULAR rollout of a UMTS Radio and Core network. Included are Project Management, Engineering, Installation, Network Integration, RF Optimization and Maintenance services, to ensure a smooth network implementation." The Proposal similarly states, "The nature of [Alcatel's] offer . . . is best characterized as everything required to 'Make the Solution Work' and everything required to 'Keep the Solution Working.'" The Proposal repeatedly uses phrases such as "network solution" and "delivery of this solution," and it expresses Alcatel's pledge to provide "all phases of work for an integrated end-to-end UMTS system solution." The SOW and the Proposal also distinguish between the network "solution" Alcatel agreed to provide and the "network elements" or "network products" Alcatel would use to deliver the final network solution. Collectively, the Proposal and the SOW provide significant support for Pine's claim that Alcatel contracted to deliver a functioning network.

Other evidence Pine relied on at summary judgment further supports its theory that the 2008 Agreement was a contract to purchase a functioning network. Specifically, internal Alcatel emails circulated shortly after the parties entered the 2008 Agreement express Alcatel's understanding that it agreed to provide an integrated network. For

20

example, one email sent near the time Pine submitted the network purchase orders stated that Pine had "finally agreed to buy our [end-to-end] solution." Another email stated that Alcatel had received Pine's purchase orders for "network deployment[]." Ms. Raskin sent similar emails stating, "Pine purchased an entire UMTS network from Alcatel." And in responding to an email from Pine questioning who had "end to end responsibility" in the "overall project," Ms. Raskin stated, "We do."

When viewed in the light most favorable to Pine, this evidence creates a genuine issue of fact regarding whether the parties intended to contract for the sale and purchase of a complete, integrated 3G network. Because Alcatel never delivered a functional network, the district court erred in granting summary judgment on Pine's breach of contract claim.[5]

### c. *The Supply Agreement's limitation on Pine's remedies*

Pine next argues the district court erred in granting summary judgment in favor of Alcatel on Pine's claim that the Supply Agreement's limitation on Pine's remedies failed

---

[5] The district court ruled alternatively that even if the evidence supported Pine's argument that it purchased an integrated network, Pine failed to establish defect of the network as a whole. Specifically, the district court ruled that "Pine's allegation the network did not function, when it was responsible for installation of certain equipment, fails to establish defect of a network." In other words, the district court ruled that where Pine was involved in installing one component of the network—the Node B towers—Pine's installation may have *caused* the network to fail. But causation is generally a fact issue, more properly decided by a jury. *J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Beeson*, 835 S.W.2d 689, 698 (Tex. App. 1992). Where Alcatel presented no evidence demonstrating that Pine's installation caused the network's failure, Alcatel has not carried its burden on summary judgment of showing "an absence of evidence to support the nonmoving party's case." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

of its essential purpose. The Supply Agreement limits Pine's remedies in two separate provisions. First, the warranty provision provides that if any equipment is not as warranted, "Alcatel shall repair or replace the Equipment," and that if Alcatel is unable to repair or replace equipment "after the exercise of commercially reasonable efforts," Alcatel may, "in its sole discretion refund to Purchaser the Purchase Price of the Product." The warranty provision also expressly disclaimed any warranties "of any kind . . . including, but not limited to, any and all implied warranties of merchantability or fitness for any intended or particular purpose." Because we conclude that Pine either forfeited or waived any breach of warranty claims, we need not address whether this limitation on remedies for breach of warranty failed of its essential purpose.

In a separate provision, Alcatel disclaimed liability for all consequential damages for any claim arising out of the agreement. The Supply Agreement thereby limits Pine's recovery for breach of contract to the "purchase price of the product or services that are the subject of such claim." Under Texas commercial law, this limitation on Alcatel's liability is enforceable. *See* Tex. Bus. & Com. Code § 2.719(c) (explaining that "[c]onsequential damages may be limited or excluded . . . where the loss is commercial"); *see also Wade & Sons, Inc. v. Am. Standard, Inc.*, 127 S.W.3d 814, 822 (Tex. App. 2003) ("Section 2.719 of the U.C.C. allows parties to limit or exclude consequential damages in their contracts . . . .").[6] Therefore, if Pine prevails on its breach of contract claim on

_____

[6] This is true even if Pine had preserved its breach of warranty claim and succeeded in proving the warranty provision's limitation to repair and replacement failed of its essential purpose. *See Bray Int'l, Inc. v. Computer Assocs. Int'l, Inc.*, No. CIV.A. H-02-98, 2005 WL 6792280, at *15 (S.D. Tex. Sept. 30, 2005), *rev'd in part on other*

remand, its recovery will be limited to the price of the equipment and services it purchased under the 2008 Agreement.

## 2.    Fraud Claims

The district court also dismissed Pine's fraud claims on summary judgment. Pine contends the district court erred by (1) applying the wrong legal standard at summary judgment, (2) disregarding evidence Pine claims demonstrates that Alcatel knowingly or recklessly made misrepresentations regarding its capacity to deploy a 3G network, and (3) dismissing Pine's constructive fraud claim as inadequately pled. We address each argument in turn.

### a.  *The district court applied the correct legal standard.*

Pine first claims the district court erroneously applied a clear-and-convincing-evidence standard to Pine's fraud claim. Although Pine correctly notes it need not prove its fraud claims by clear and convincing evidence to survive summary judgment, "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Therefore, "the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions." *Id.* at 255; *see*

---

*grounds*, No. CIV H-02-0098, 2005 WL 3371875 (S.D. Tex. Dec. 12, 2005) (predicting that "the Texas Supreme Court would hold that a limitation of liability clause that purports to exclude any and all liability for consequential damages . . . cannot be voided even if a limited remedy clause fails of its essential purpose"); *see also Eastman Chem. Co. v. Niro, Inc.*, 80 F. Supp. 2d 712, 721 (S.D. Tex. 2000) (citing cases and concluding that "a waiver of consequential damages can be valid notwithstanding the fact that a limitation of remedy has failed of its essential purpose").

*also Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1244 (10th Cir. 1990) (ruling that summary judgment on a fraud claim was proper "[b]ecause of the high standard of proof and [plaintiff's] failure to establish each element of fraud").

Here, the district court did just that. It did not require Pine to show fraud by clear and convincing evidence, but merely took that burden into consideration in ruling Pine had not come forward with evidence on each element of fraud. We reject Pine's contention that the district court applied the wrong legal standard.

### b. *Pine failed to present sufficient evidence of fraudulent inducement to survive summary judgment.*

Pine next challenges the merits of the district court's fraud determination. Pine argues the district court was improperly dismissive of evidence that, according to Pine, shows Alcatel represented it could deploy a 3G network even though Alcatel knew, or was reckless in not knowing, it did not have sufficient resources in the United States to deploy a 3G network. The district court granted summary judgment on Pine's fraud claim based on its conclusion that statements of opinion or promises of future performance are insufficient to show fraud. The court reasoned that even if the promises of future performance later turned out to be untrue, Pine failed to provide any evidence that Alcatel knew the statements to be false when made or that it was reckless in making those statements. The court thus held Pine had failed to present a genuine issue as to essential elements of its fraud claim.[7]

---

[7] Under Oklahoma law, the elements of fraud are: "1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted

24

We agree with the district court. Although Pine presents internal, post-2008 Agreement emails expressing frustration with Alcatel's U.S. resources, none of these emails suggest Alcatel's sales team knew of these deficiencies at the time the parties entered the 2008 Agreement. And the only pre-2008 Agreement email Pine relies on expresses Alcatel's opinion that deploying Pine's network in the second quarter of 2009 was a "reasonable timeframe." Although the evidence suggesting Alcatel may have been hampered by a lack of resources is relevant to Pine's breach of contract claim, it is insufficient to create a triable issue on whether Alcatel fraudulently induced Pine to enter the 2008 Agreement. *See Citation Co. Realtors v. Lyon*, 610 P.2d 788, 790 (Okla. 1980) ("There is a wide distinction between the nonperformance of a promise and a promise made mala fide, only the latter being actionable fraud."). We therefore affirm the district court's grant of summary judgment on Pine's fraudulent inducement claim.

c. *Pine failed to adequately plead constructive fraud.*

Pine also argues the district court erred in rejecting its constructive fraud claim as inadequately pled.[8] The district court held Pine had failed to plead its constructive fraud claim with particularity. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party

upon, and 4) which is relied on by the other party to his (or her) own detriment." *Bowman v. Presley*, 212 P.3d 1210, 1218 (Okla. 2009).

[8] More precisely, Pine argues it sufficiently pled both constructive fraud and negligent misrepresentation. Under Oklahoma law, constructive fraud "may be based on a negligent misrepresentation or an innocent misrepresentation where there is an underlying right to be correctly informed of the facts. *Croslin v. Enerlex, Inc.*, 308 P.3d 1041, 1046 (Okla. 2013), *reh'g denied* (Aug. 7, 2013). In other words, negligent misrepresentation is one type of constructive fraud, and therefore we consider Pine's negligent misrepresentation and constructive fraud claims together.

25

must state with particularity the circumstances constituting fraud or mistake."); *see also*

*Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (explaining that under

Rule 9(b), the pleading must "set forth the time, place and contents of the false

representation, the identity of the party making the false statements and the consequences

thereof" (internal quotation marks omitted)). Specifically, the district court ruled Pine

failed to plead duty and concealment, which are essential elements of constructive fraud.

*See Howell v. Texaco Inc.*, 112 P.3d 1154, 1161 (Okla. 2004) ("Constructive fraud is the

concealment of a material fact by one who has a duty to disclose.").

In challenging this ruling, Pine points to portions of its First Amended Complaint

alleging that Alcatel's representations were "made recklessly," that Pine "reasonably

relied upon Alcatel's representations and promises," and that Pine suffered damage as a

result. It also pled "[i]n the alternative, Alcatel's representations, recommendations, and

installation services were negligent and caused Pine to suffer damages." *Id.* Absent from

these allegations is any mention of duty or concealment of a material fact, which are

essential elements of constructive fraud. We therefore affirm the district court's ruling

that this claim was inadequately pled.

To summarize, we reverse in part and affirm in part the district court's grant of

summary judgment in favor of Alcatel. Pine presented sufficient evidence to raise a

genuine issue of material fact of whether Alcatel breached the 2008 Agreement by not

delivering an operational 3G network. We therefore reverse the district court's grant of

summary judgment on Pine's breach of contract claim. But we affirm the district court's

grant of summary judgment on Pine's breach of express warranty claim and its

conclusion that the Supply Agreement's disclaimer of consequential damages is enforceable. We also affirm the district court's grant of summary judgment to Alcatel on Pine's fraud claims.

### B. Denial of Motion for Leave to Amend Complaint

Pine next contends the district court abused its discretion in denying its motion for leave to amend. The district court denied Pine's motion on the basis that it was untimely.[9] We review a denial of a motion for leave to amend for an abuse of discretion. *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). Although Federal Rule of Civil Procedure 15 indicates leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), a court may refuse leave to amend "on a showing of undue delay." *Duncan*, 397 F.3d at 1315 (internal quotation marks omitted). In this circuit, "untimeliness alone is an adequate reason to refuse leave to amend." *Id.* Here, Pine filed its motion to amend two years into the litigation and after the deadline for amended pleadings had passed. The district court acted within its discretion in denying Pine's motion as untimely. We therefore affirm this decision.

### C. Exclusion of Pine's Expert Witness

Finally, Pine contends the district court abused its discretion in excluding the testimony of its proffered expert, Jonathan Reeves. The district court ruled that Mr. Reeves's expert report was inadmissible because Pine failed to timely identify

---

[9] The district court further ruled that even if the motion had been timely, granting it would be futile because Pine's opposition to summary judgment failed to raise a genuine issue of fact for trial. Because we rule that the district court was within its discretion in denying Pine's motion for leave to amend on the basis that it was untimely, we need not address whether it was also futile.

27

Mr. Reeves as an expert, his report failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B), and his opinions were purely conclusory. We review for an abuse of discretion a district court's decision to exclude expert testimony. *Proctor & Gamble Co. v. Haugen*, 427 F.3d 727, 742 (10th Cir. 2005).

Federal Rule of Civil Procedure 26(a)(2)(D) requires disclosures to be made "at the times and in the sequence that the court orders." On appeal, Pine argues it timely disclosed Mr. Reeves because Pine intended Mr. Reeves to serve as a rebuttal witness, and therefore Pine was not required to identify him on the disclosure deadline for experts in chief. Pine did not argue this distinction in the district court. Pine also failed to demonstrate before the district court and on appeal that Mr. Reeves's report met the substantive requirements of Rule 26. *See* Fed. R. Civ. P. 26(a)(2)(B) (requiring parties to provide as to an expert witness a description of all opinions of the expert and the basis for them, the facts or data considered by the expert, a list of any exhibits the expert will use, a description of the expert's qualifications, a list of other cases the expert has participated in, and a statement of the expert's compensation).

Because Pine's brief on appeal lacks any discussion of how Mr. Reeves's report meets the specific requirements of Rule 26(a)(2)(B), we affirm the district court's decision to exclude Mr. Reeves.

## IV.    CONCLUSION

We affirm in part and reverse in part the district court's grant of summary judgment to Alcatel. Pine presented sufficient evidence to raise a genuine issue of material fact on whether Alcatel breached the 2008 Agreement. We therefore reverse the

28

grant of summary judgment on this claim and remand to the district court for further proceedings consistent with this opinion. But we affirm the district court's grant of summary judgment as to Pine's breach of express warranty claim, Pine's claim that it is entitled to consequential damages, and Pine's fraud claims. We also affirm the district court's denial of Pine's motion for leave to amend and its exclusion of Pine's expert.

ENTERED FOR THE COURT


Carolyn B. McHugh
Circuit Judge