**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 18-2259 & 18-2656
_____

IN RE: AVANDIA MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION


UNITED FOOD AND COMMERCIAL WORKERS LOCAL
1776 AND PARTICIPATING EMPLOYERS HEALTH
AND WELFARE FUND;
JB HUNT TRANSPORT SERVICES, INC.,
Appellants


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court Nos. 2-07-md-01871,
2-10-cv-02475, 2-11-cv-04013
District Judge:  The Honorable Cynthia M. Rufe

Argued March 6, 2019

Before:  SMITH, *Chief Judge*, AMBRO, and RESTREPO,
*Circuit Judges*

(Filed: May 15, 2 019)

Hannah W. Brennan          **[ARGUED]**
Edward Notargiacomo
Thomas M. Sobol
Hagens Berman Sobol Shapiro
55 Cambridge Parkway
Suite 301
Cambridge, MA  02142

James R. Dugan
Douglas R. Plymale
The Dugan Law Firm
365 Canal Street
Suite 1000
New Orleans, LA  70130
          *Counsel for Appellant*

Kyle A. Dolinsky
Sean P. Fahey          **[ARGUED]**
Nina M. Gussack
Pepper Hamilton
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
          *Counsel for Appellee*

Christopher Morten
Yale Law School
127 Wall Street
P.O. Box 209090
New Haven, CT  06520

2

*Counsel for Amicus Appellant*

_____

OPINION OF THE COURT

_____

SMITH, *Chief Judge*.

Following a decision of the District Court granting summary judgment to GlaxoSmithKline LLC ("GSK"), the losing parties, two health benefit plans, appealed from that final order.[1] While briefing the appeal, the parties sought to include in their joint appendix certain documents filed in connection with the summary judgment proceedings. GSK had previously designated some of these documents as confidential and contended that they should remain so on appeal; the plans disagreed. That led GSK to ask the District Court, on two occasions and pursuant to the applicable protective order, to maintain the confidentiality of certain documents. The plans opposed these requests, arguing that the common law right of access and the First Amendment right of public access required the unsealing of the documents. The District Court largely sided with GSK, refusing to unseal most of the documents. The plans have appealed the District Court's two post-judgment sealing orders.

_____

[1] We are separately considering that appeal, No. 18-1010, which challenges the District Court's summary judgment ruling.

We conclude that the District Court failed to apply the proper legal standard for the common law right of access, which requires as a starting point the application of a presumption of public access. *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986). By applying, instead, our standard for a protective order under Federal Rule of Civil Procedure 26, the able District Judge incorrectly placed a burden on the plans to show an interest in disclosure—rather than on GSK to justify continued sealing. We will therefore vacate and remand to allow the District Court to consider GSK's motions for continued confidentiality under the appropriate standard.

## I.[2]

### A.

GSK manufactures, markets, and sells Avandia, a drug indicated to treat Type II diabetes.[3] *In re Avandia Mktg., Sales Prac. & Prod. Liab. Litig.* (*Avandia I*), 804 F.3d 633, 635 (3d Cir. 2015). The plans contend that GSK concealed evidence of Avandia's cardiovascular risk and, instead, promoted

---

[2] As previously mentioned, the plans have separately appealed the District Court's grant of summary judgment. We therefore recount only the limited facts and procedural history necessary to decide the sealing issues.

[3] The word "indicated" is a term of art within the pharmaceutical industry meaning to use a drug or device for an approved purpose. *Cf. Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 345–46 (2001).

4

Avandia as providing cardiovascular benefits. According to the plans, this marketing strategy was false and misleading because GSK's own studies showed that Avandia increased certain markers of cardiovascular risk. The plans assert that, for years, GSK buried bad study results, misrepresented the truth about Avandia's cardiovascular profile to doctors and pharmacy benefit managers, and reaped billions of dollars in profits. In 2007, an independent researcher published an article in the *New England Journal of Medicine* claiming that Avandia increased the risk of heart attack and cardiovascular disease. *Id.*; App. 1064. Lawsuits ensued, the United States Food and Drug Administration ("FDA") investigated, and even the United States Senate Finance Committee released a report revealing GSK's misdeeds.

**B.**

On May 21, 2010, in the midst of heightened regulatory and public scrutiny of Avandia, United Food and Commercial Workers Local 1776 and Participating Employers Health and Welfare Fund ("UFCW") filed suit against GSK in the United States District Court for the Eastern District of Pennsylvania. UFCW alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as various state consumer protection laws. J.B. Hunt Transport Services, Inc. ("J.B. Hunt") filed a complaint containing similar claims on June 20, 2011. Both UFCW and J.B. Hunt (collectively referred to as "the plans") filed suit on behalf of a proposed class of United States health benefit providers that had purchased Avandia. These third-party payor cases became part of a multi-district litigation ("MDL"), which also included

5

consumer and personal injury cases.[4]  As part of the MDL, the cases were governed by a protective order, PTO 10, which covered discovery of confidential materials.

In November 2010, GSK moved to dismiss the plans' complaints, arguing that the plans lacked standing to bring RICO claims.  In October 2013, the District Court denied that motion; it later certified its decision for interlocutory appeal.  We granted permission to appeal and, in October 2015, affirmed the District Court's denial of GSK's motion to dismiss.  *Avandia I*, 804 F.3d at 646.

Less than a year later, GSK moved for summary judgment as to the plans' consumer protection claims on federal preemption grounds.  GSK also contended that the plans' RICO claims should be dismissed for failing to identify a distinct RICO enterprise.  In the course of briefing GSK's motion for summary judgment, the parties filed documents under seal pursuant to PTO 10.  At that time, neither party raised any issue as to the confidentiality of the sealed exhibits.  On December 7, 2017, the District Court granted GSK's motion for summary judgment.

After the plans appealed the District Court's summary judgment ruling, GSK indicated that it wanted to maintain the confidentiality of certain sealed documents that had been filed in connection with the summary judgment motion.  GSK therefore moved in the District Court to keep some of the

---

[4] District Judge Rufe has presided over the Avandia MDL with commendable care and efficiency since October 2007.

6

summary judgment records under seal. On May 31, 2018, the District Court granted in part and denied in part GSK's motion (the "May Sealing Order"). App. 2459. The Court unsealed its own summary judgment opinion but maintained the confidentiality of the remainder of the documents. *Id.*

A few weeks later, GSK again moved to maintain under seal additional summary judgment records. The District Court granted in part and denied in part the second sealing motion on July 24, 2018 (the "July Sealing Order"). *Id.* at 2460–61. The Court directed GSK to file a redacted statement of undisputed material facts but otherwise maintained the seal. *Id.*

The plans timely appealed the May Sealing Order (No. 18-2259) and the July Sealing Order (No. 18-2656).

## II.

We apply three distinct standards when considering various challenges to the confidentiality of documents. We apply the factors articulated in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 783–92 (3d Cir. 1994), when we review orders preserving the confidentiality of discovery materials pursuant to Federal Rule of Civil Procedure 26. But we apply the more rigorous common law right of access when discovery materials are filed as court documents. In addition to recognizing fewer reasons to justify the sealing of court records, the public right of access—unlike a Rule 26 inquiry—begins with a presumption in favor of public access. *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 192–93 (3d Cir. 2001). Finally, the First Amendment right of public access

7

attaches to, *inter alia*, civil trials. *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984). We will discuss each standard in turn.

**A.**

Federal Rule of Civil Procedure 26(c) permits the District Court to enter a protective order to shield a party "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A protective order is "intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings." *Pansy*, 23 F.3d at 786. A protective order may apply to all litigation materials—not just those filed in court—because "[c]ourts have inherent power to grant orders of confidentiality over materials not in the court file." *Id.* at 785.

The proponent of the protective order shoulders "[t]he burden of justifying the confidentiality of each and every document sought to be" sealed.[5] *Id.* at 786–87. The District Court "must balance the requesting party's need for

---

[5] As we have previously stated, "in cases involving large-scale discovery, the court may construct a broad umbrella protective order upon a threshold showing by the movant of good cause." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 n.17 (3d Cir. 1994). Once a party challenges the protective order, however, "the party seeking to maintain the seal" must justify the continued sealing of those documents. *Id.* At that point, the district court must conduct a document-by-document review.

8

information against the injury that might result if uncontrolled disclosure is compelled." *Id.* at 787. The party seeking a protective order "over discovery material must demonstrate that 'good cause' exists for the order." *Id.* at 786 (quoting Fed. R. Civ. P. 26(c)); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) (holding that the good cause requirement for protective orders does not violate the First Amendment). Good cause means "that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Pansy*, 23 F.3d at 786 (quoting *Publicker Indus.*, 733 F.2d at 1071). To that end, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id.* (internal quotation marks omitted).

We have set forth various factors—"which are neither mandatory nor exhaustive"—that courts may consider when determining whether good cause exists and, by extension, whether a protective order should issue:

    1.     whether disclosure will violate any privacy interests;

    2.     whether the information is being sought for a legitimate purpose or for an improper purpose;

3.      whether disclosure of the information will cause a party embarrassment;[6]

4.      whether confidentiality is being sought over information important to public health and safety;

5.      whether the sharing of information among litigants will promote fairness and efficiency;

6.      whether a party benefitting from the order of confidentiality is a public entity or official; and

7.      whether the case involves issues important to the public.

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787–91).  The District Court "is best situated to determine what factors are relevant to" any

---

[6] Although "preventing embarrassment may be a factor satisfying the 'good cause' standard," the proponent of a protective order "must demonstrate that the embarrassment will be particularly serious."  *Id.* (internal quotation marks omitted).

10

given dispute.[7]  *Id.*  The Court's analysis, however, "should always reflect a balancing of private versus public interests." *Id.*  The District Court "should articulate on the record findings supporting its" decision to grant or deny a protective order. *Pansy*, 23 F.3d at 789.

**B.**

Analytically distinct from the District Court's ability to protect discovery materials under Rule 26(c), the common law presumes that the public has a right of access to judicial materials.  In both criminal and civil cases, a common law right of access attaches "to judicial proceedings and records." *In re Cendant Corp.*, 260 F.3d at 192.  The common law right of access "antedates the Constitution." *Bank of Am.*, 800 F.2d at 343.  The right of access "promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988).  Public observation facilitated by the right of access "diminishes possibilities for injustice, incompetence, perjury, and fraud." *Id.*  Moreover, "the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness." *Id.*

---

[7] The Court also "retains the power to modify or lift confidentiality orders that it has entered." *Id.* at 784.  When deciding whether to modify a protective order, the District Court should consider reliance by the original parties. *Id.* at 789–90.

The right of access includes the right to attend court proceedings and to "inspect and copy public records and documents, including judicial records and documents." *In re Cendant Corp.*, 260 F.3d at 192. Whether the common law right of access applies to a particular document or record "turns on whether that item is considered to be a 'judicial record.'" *Id.* A "judicial record" is a document that "has been filed with the court . . . or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *Id.* Once a document becomes a judicial record, a presumption of access attaches. *See id.* at 192–93.

"[T]here is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." *Id.* Summary judgment proceedings are no exception— documents filed in connection with a motion for summary judgment are judicial records. *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660–62 (3d Cir. 1991).

Yet the common law right of access is "not absolute." *Bank of Am.*, 800 F.2d at 344. "The presumption [of access] is just that, and thus may be rebutted." *Westinghouse Elec. Corp.*, 949 F.2d at 662. The party seeking to overcome the presumption of access bears the burden of showing "that the interest in secrecy outweighs the presumption." *Bank of Am.*, 800 F.2d at 344. The movant must show "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted). The "strong

12

presumption of openness does not permit the routine closing of judicial records to the public." *Id.* (internal quotation marks omitted).

To overcome that strong presumption, the District Court must articulate "the compelling, countervailing interests to be protected," make "specific findings on the record concerning the effects of disclosure," and "provide[] an opportunity for interested third parties to be heard." *In re Cendant Corp.*, 260 F.3d at 194 (emphasis omitted). "In delineating the injury to be prevented, specificity is essential." *Id.* "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* "[C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167 (3d Cir. 1993). To that end, the District Court must "conduct[] a document-by-document review" of the contents of the challenged documents." *Id.*

## C.

Finally, the public and the press have a First Amendment right of access to civil trials. *Publicker Indus.*, 733 F.2d at 1070. Although the constitutional right of access is "not absolute, . . . as a First Amendment right it is to be accorded the due process protection that other fundamental rights enjoy." *Id.*

It remains an open question in this Circuit whether the First Amendment right of access applies to records of summary judgment proceedings. We use a two-prong test to assess

13

whether the right of access attaches: (1) the experience prong asks "whether the place and process have historically been open to the press"; and (2) the logic prong evaluates "whether public access plays a significant positive role in the functioning of the particular process in question." *N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 429 (3d Cir. 2016). If both prongs "are satisfied, a qualified First Amendment right of public access attaches." *Id.*; *see also PG Publ'g Co. v. Aichele*, 705 F.3d 91, 104 (3d Cir. 2013) (explaining that the experience and logic test "balances the interests of the People in observing and monitoring the functions of their government against the government's interest and/or long-standing historical practice of keeping certain information from public scrutiny").

"The First Amendment right of access requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed." *In re Cendant Corp.*, 260 F.3d at 198 n.13. Any restriction on the right of public access "is . . . evaluated under strict scrutiny." *PG Publ'g Co.*, 705 F.3d at 104. If the First Amendment right of access applies, "there is a presumption that the proceedings will be open to the public." *Publicker Indus.*, 733 F.2d at 1073. The party seeking closure may rebut the presumption of openness only if able to demonstrate "an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.*; *see also id.* at 1070 (explaining that "to limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest").

14

The party seeking closure or sealing in the face of the First Amendment right of access "bears the burden of showing that the material is the kind of information that courts will protect and that there is good cause for the order to issue." *Id.* at 1071. Good cause means "that disclosure will work a clearly defined and serious injury to the party seeking closure"; "[t]he injury must be shown with specificity." *Id.* "For example, an interest in safeguarding a trade secret may overcome a presumption of openness." *Id.* at 1073. Bad business practices, in the absence of other circumstances, do not overcome the presumption. *Id.* at 1074.

Procedurally, the District Court "must both articulate the countervailing interest it seeks to protect and make findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* at 1071 (internal quotation marks omitted). Absent those findings, we will not "speculate" as to the District Court's reasoning. *Id.* at 1072.

15

**III.**[8]

**A.**

Although the plans invoked the common law right of access, the District Court assessed GSK's motions for continued confidentiality by applying the Rule 26 standard governing protective orders. In its one-page May Sealing Order, the District Court granted in part and denied in part GSK's motion to preserve the confidentiality of the summary judgment records. App. 2459. The Court denied GSK's motion with respect to the summary judgment opinion, which the Court unsealed without redaction. The Court granted the motion as to all other documents. In doing so, the District Court neither cited the applicable legal standard nor discussed the specific documents at issue. The Court later explained that its reasoning in the July Sealing Order applied equally to the May Sealing Order.

In its July Sealing Order, the Court again granted in part and denied in part GSK's second motion to maintain confidentiality. *Id.* at 2460–61. The District Court ordered GSK to file a redacted version of its statement of undisputed material facts. The Court otherwise granted the motion for

---

[8] We exercise jurisdiction under 28 U.S.C. § 1291. We review the District Court's decision to deny the right of access for abuse of discretion. *See Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 197 (3d Cir. 2001); *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986). We exercise plenary review over the legal questions presented in this appeal. *See Pansy*, 23 F.3d at 776.

16

continued confidentiality. In a footnote, the District Court quoted the *Pansy* factors, explaining that this Court has instructed district courts to weigh the factors when determining whether good cause exists to justify a protective order under Rule 26. The District Court mentioned the common law right of access, acknowledging that the moving party must show that disclosure "will work a clearly defined and serious injury to it." *Id.* at 2460 n.1 (internal quotation marks omitted) (quoting *Miller*, 16 F.3d at 551). But the District Court reasoned that both the Rule 26 standard and the common law right of access doctrine required "identifying the harm to the designating party and balancing the [*Pansy*] factors." *Id.* at 2460–61 n.1 (citing *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 222–23 (3d Cir. 2011)).

The District Court's analysis, contained in the same footnote, went as follows:

> In this case, [GSK] has articulated a specific and substantial harm from making public its confidential communications to the FDA, including harm to its competitive standing, to its commercial reputation, and to its relationships with physicians and patients. [GSK] is thus seeking to preserve the confidentiality of these documents for a legitimate purpose. Given the potential harm to [GSK] by disclosing these communications with the FDA, and the fact that there are no substantial countervailing interests other than the public's broad right to review a judicial proceeding, the Court will grant [GSK]'s Motion with respect to the identified documents

17

containing communications with the FDA. The Court will deny the motion, however, with respect to preserving the confidentiality of the entirety of the submitted statement of undisputed facts. [GSK] may redact the confidential communications with the FDA contained in the statement of undisputed facts, but [GSK] ha[s] not demonstrated why the full submission should be kept confidential.

*Id.* at 2461 n.1 (internal citations omitted). The Court acknowledged that its rulings had "no bearing on the confidentiality designation such documents are given on appeal."[9] *Id.*

**B.**

It is undisputed that each of the challenged documents are "judicial records" subject to the common law right of access because the parties filed the documents on the District Court's public docket in support of, or in opposition to, GSK's motion for summary judgment. *See Westinghouse Elec. Corp.*, 949 F.2d at 660–61. As such, the District Court was obligated

---

[9] To that end, the parties have briefed the sealing of certain appendices on appeal. Because our assessment of the appellate motions to seal overlaps with the District Court's analysis on remand, we will defer such an assessment until after the District Court has had the opportunity to consider GSK's motions under the correct standard. All disputed documents filed in this appeal will continue to be held provisionally under seal.

18

to apply the exacting common law right of access standard, including the "strong presumption" of access, before granting GSK's motions for continued confidentiality.  In failing to do so, the learned District Judge erred.[10]  Instead, by conflating the *Pansy* factors with the standard governing the common law right of access, the District Court gave no effect to the presumption of public access.

The District Court, relying on *LEAP Systems*, seems to have considered the *Pansy* factors as the only applicable legal standard, equating the Rule 26 analysis with the common law right of access analysis.  But *LEAP Systems* does not support such an approach.  There, after years of contentious litigation and failed mediation attempts, the parties entered into a settlement agreement with the district court's assistance. *LEAP Sys., Inc.*, 638 F.3d at 218, 221.  Fearing that the deal would soon unravel, the parties recorded a transcript containing the terms of the settlement agreement.  *Id.* at 218.

---

[10] Even under the more lenient standard for a protective order, the District Court's analysis would not be sufficient.  We have repeatedly counseled that the party seeking confidentiality must bear the burden of justifying sealing. *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1993).  Once sealing is challenged, the proponent of sealing "must make a particularized showing of the need for continued secrecy if the documents are to remain under seal." *Id.* (internal quotation marks omitted).  The District Court must then undertake "a document-by-document review," *id.* at 167, to ascertain whether continued sealing is proper and "articulate on the record findings" to support its decision, *Pansy*, 23 F.3d at 789.

The parties repeatedly asked the district court if the settlement terms would remain under seal; the district court repeatedly assured them that the terms would be kept confidential. *Id.* But the parties filed the transcript in the district court, and a third party intervened to unseal the transcript. *Id.* at 218–19. The district court recognized that, once the parties had filed the transcript, it became a judicial record subject to the common law right of access. *Id.* at 219. The court reasoned, however, that the parties' interest in preventing competitors from using proprietary information contained in the transcript—coupled with their reliance on the district court's assurances of confidentiality—outweighed the intervenor's interest in the terms of the settlement agreement. *Id.*

Reviewing for abuse of discretion, we agreed. *Id.* at 223. We recognized the "strong presumption in favor of public accessibility" and agreed that a party's "vague assertions that the transcript contains secretive business information, and that disclosure would render [it] at a tactical disadvantage" were insufficient to overcome that strong presumption. *Id.* at 221–22 (internal quotation marks omitted). We found persuasive, however, the district court's specific finding that the parties "would not have entered into the settlement agreements *but for* the [c]ourt's assurance of confidentiality." *Id.* at 222. Given the circumstances, we concluded that the parties' "reliance on the [d]istrict [c]ourt's assurances of confidentiality [was] entirely reasonable and sufficient to outweigh the public's common law right of access." *Id.*

Weighing the public's interest in disclosure, we considered the district court's reliance on some of the *Pansy* factors: whether confidentiality was being sought over

20

information important to public health and safety, whether the sharing of information among litigants would promote fairness and efficiency, whether the party benefitting from the order of confidentiality was a public entity or official, and whether the case involved issues important to the public. *See id.* We discerned no error in the district court's conclusion that the public's interest in disclosure under the common law right of access had been rebutted. *Id.* at 222–23.

Nowhere in *LEAP Systems* did we hold that the *Pansy* factors supplanted our longstanding common law right of access standard. Rather, we determined that the district court did not abuse its discretion by weighing *some* of these factors when considering the public's interest in disclosure. In short, while the *Pansy* factors may provide useful guidance for courts conducting the balancing required by the common law test, the *Pansy* factors do not displace the common law right of access standard. The difference is not merely semantic—the *Pansy* factors are not sufficiently robust for assessing the public's right to access judicial records. Unlike the Rule 26 standard, the common law right of access begins with a thumb on the scale in favor of openness—the strong presumption of public access. *Compare Pansy*, 23 F.3d at 780–83 (discussing the common law right of access doctrine and recognizing the presumption of access), *with id.* at 783–92 (discussing the standard applicable to protective orders and enumerating the *Pansy* factors).

Moreover, some of the *Pansy* factors are incompatible with our case law on the common law right of access. One of the *Pansy* factors assesses "whether disclosure of the information will cause a party embarrassment." *Glenmede Tr.*

21

*Co.*, 56 F.3d at 483.  But we have repeatedly said that concern about a company's public image, embarrassment, or reputational injury, without more, is insufficient to rebut the presumption of public access.  *Westinghouse Elec. Corp.*, 949 F.2d at 663; *see also Littlejohn*, 851 F.2d at 685 (reasoning that the proponent of the seal's "desire to preserve corporate reputation" is insufficient to rebut the presumption); *Publicker Indus.*, 733 F.2d at 1074 (explaining that public disclosure of poor management is inadequate to justify sealing); *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1180 (6th Cir. 1983) (explaining that the desire to shield prejudicial information from competitors and the public is understandable, but "cannot be accommodated by courts without seriously undermining the tradition of an open judicial system").

*Pansy* also considers "whether the information is being sought for a legitimate purpose or for an improper purpose." *Glenmede Tr. Co.*, 56 F.3d at 483.  But a person's motive for inspecting or copying judicial records is irrelevant under the common law right of access.  *See Leucadia, Inc.*, 998 F.2d at 167–68; *see also Bank of Am.*, 800 F.2d at 345 ("The applicability and importance of these interests [served by the common law right of access] are not lessened because they are asserted by a private party to advance its own interests . . . .").

We conclude that by conflating the *Pansy* factors with the common law right of access standard, the District Court committed an error of law.

22

**C.**

Having explained that the *Pansy* factors are not a substitute for the common law right of access standard—which begins with the presumption of access—we turn to whether the District Court nonetheless applied the strong presumption required by the common law right of access. We conclude that it did not, and we must therefore remand.

As noted above, the District Court did acknowledge the common law right of access. It failed, however, to acknowledge the presumption of public accessibility. It reasoned that continued sealing is proper given that "there are no substantial countervailing interests *other than* the public's broad right to review a judicial proceeding." App. 2461 n.1 (emphasis added). This analysis gave insufficient weight to the public's interest in openness. Consideration of the public's right of access must be the starting point, not just one of multiple factors. The scale is tipped at the outset in favor of access. And the right of access is not a mere formality—it "promotes public confidence in the judicial system"; "diminishes possibilities for injustice, incompetence, perjury, and fraud"; and "provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness." *Littlejohn*, 851 F.2d at 678. These interests are particularly important in a case such as this one, which implicates the public's trust in a well-known and (formerly) widely-used drug. By giving insufficient weight to the public's strong interest in the openness of judicial records, the District Court erred as a matter of law in applying the common law right of access.

23

The District Court also erred by not conducting a document-by-document review, instead analyzing sixty-five disputed documents in a single paragraph contained in a footnote. This collective evaluation of the harm allegedly suffered by GSK falls short of the exacting analysis our precedent requires. *See Leucadia, Inc.*, 998 F.2d at 167 (explaining that the district court's broad-brush approach "was inconsistent with our prior statements that careful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants").[11]

Again, the strong presumption of openness inherent in the common law right of access "disallows the routine and perfunctory closing of judicial records." *In re Cendant Corp.*, 260 F.3d at 193–94. To overcome the presumption, GSK must show that "the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Miller*, 16 F.3d at 551 (internal quotation marks omitted). And on remand, the District Court should articulate "the compelling[,] countervailing interests to be protected," make "specific

---

[11] To be clear, we do not require a district court to provide lengthy, detailed discussion of each individual document. Yet it must be clear from the record that the district court engaged in a particularized, deliberate assessment of the standard as it applies to each disputed document. We are unable to discern such exacting review from the single paragraph provided in the July Sealing Order, in which a multitude of documents spanning several years were divided into broad categories.

findings on the record concerning the effects of disclosure, and provide[] an opportunity for interested third parties to be heard." *In re Cendant Corp.*, 260 F.3d at 194 (emphasis and internal quotation marks omitted); *see id.* at 197–98 (holding that the district court abused its discretion in sealing bids for lead class counsel because the court "did not provide any clear reason for why it sealed the bids," "did not recognize the presumption of access," and did not "engage in [the] balancing process to determine whether the bids were the type of information normally protected or whether there was a clearly defined injury to be prevented").

## D.

In remanding for the District Court to apply the appropriate standard in the first instance, we offer a few observations about the evidence GSK submitted in support of sealing. To support its requests for continued confidentiality, GSK provided an eight-year-old declaration—the Armand Declaration—which actually supported sealing a different set of documents.[12] Outdated evidence such as this is insufficient

---

[12] The declaration of former Executive Product Director for Avandia, Timothy Armand, was originally submitted in support of a 2010 challenge to the confidentiality of documents. Although GSK argues that "the same types of documents" covered by the Armand Declaration are at issue here, Br. of Appellee 40, we have no way to verify that assertion. *See* Br. of Appellants 25 n.93 (explaining that the Armand Declaration references documents by Bates numbers, which are then listed on a separate appendix not provided to the plans or the Court).

to overcome the presumption of public access. *See Miller*, 16 F.3d at 551–52 (instructing courts that, even if the initial sealing of documents was justified, they should "closely examine whether circumstances have changed sufficiently to allow the presumption allowing access to court records to prevail"); *Westinghouse Elec. Corp.*, 949 F.2d at 663 (explaining that Westinghouse's reliance on old affidavits "without any current evidence to show how public dissemination of the pertinent materials now would cause the competitive harm it claims" is insufficient to meet the exacting common law burden). "[S]ealing must be based on *current evidence* to show how public dissemination of the pertinent materials *now* would cause the competitive harm." *In re Cendant Corp.*, 260 F.3d at 196 (internal quotation marks omitted).

Perhaps realizing the deficiencies of the Armand Declaration, GSK submitted a second declaration in its reply brief in support of its second motion to seal. This declaration, the Walker Declaration, contains broad, vague, and conclusory allegations of harm that are, standing alone, insufficient to

26

overcome the presumption of public access.[13]  For example, the Walker Declaration claims that disclosure of GSK's old research strategies "would still aid competitors in developing research strategies and *could be used* to harm GSK's relationship with patients and physicians."  S.A. 1956, ¶ 31 (emphasis added).  The Walker Declaration does not explain, however, how twenty-year-old research strategies could assist current competitors or harm GSK's current relationships with patients and physicians.  These blanket assertions of harm that "could" come to fruition fall short of the clearly defined and serious injury that GSK must articulate to obtain sealing under any standard.

Finally, it seems that GSK is relying on allegations of reputational injury to support continued confidentiality.  For example, the District Court discussed the "harm to [GSK's] competitive standing, to its commercial reputation, and to its relationships with physicians and patients."  App. 2461 n.1.  To be sure, courts may permissibly seal judicial records "where they are sources of business information that might harm a litigant's competitive standing."  *Westinghouse Elec. Corp.*,

---

[13] The plans urge us to disregard entirely the Walker Declaration because it was inappropriately submitted on reply.  The plans argue that they raised the deficiencies of the Armand Declaration in their opposition to the first sealing motion but that GSK failed to submit the Walker Declaration, which was designed to correct those deficiencies, until its reply to the second sealing motion.  Because we will remand for the District Court's consideration of GSK's first and second sealing motions, we leave for that Court to decide whether to consider the Walker Declaration.

27

949 F.2d at 662 (internal quotation marks omitted). Here, however, the District Court did not articulate—and we are unable to see—how the purported harm to GSK's competitive standing chalks up to anything more than mere embarrassment.[14] Mere embarrassment is insufficient to overcome the strong presumption of public access inherent in the common law right. *Publicker Indus.*, 733 F.2d at 1074 (explaining that courts generally should not seal evidence of "bad business practice[s]"); *see Brown & Williamson Tobacco Corp.*, 710 F.2d at 1180 ("Indeed, common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know.").

We will vacate the May and July Sealing Orders and remand this matter to permit the District Court to conduct a detailed review of the challenged documents by applying the proper standard for accessibility under the common law. *See Leucadia, Inc.*, 998 F.2d at 167 (emphasizing that "the required balancing should be done in the first instance by the district court").

---

[14] GSK has not claimed that any of the sealed documents contain trade secrets—a noted exception to the presumption of public access. Confidential business information "is not entitled to the same level of protection from disclosure as trade secret information." *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991) (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 685 (3d Cir. 1988)).

28

**E.**

The plans and amici have asked us to go further. According to them, the First Amendment right of public access applies to summary judgment records. But, whereas we have extended the common law right of access to summary judgment records, we have yet to do so under the First Amendment right of public access.[15]

We have repeatedly declined to tackle the contours of the First Amendment right of public access when the common law right has been sufficient to permit access. *See, e.g.*, *In re Cendant Corp.*, 260 F.3d at 198 n.13 (declining to reach the First Amendment issue because the District Court's order failed to satisfy the requirements for abridging the common law right of access, "the parameters of the First Amendment right of access to civil proceedings are undefined," and "significant constitutional questions" remain as to "what documents are subject to its reach"); *Leucadia, Inc.*, 998 F.2d at 161 n.6 (declining to reach the First Amendment right of access and instead "limit[ing] our inquiry to the common law"); *Westinghouse Elec. Corp.*, 949 F.2d at 659 (declining to

---

[15] Two of our sister circuits have held that the First Amendment right of public access applies to summary judgment documents. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). *But see In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1338 (D.C. Cir. 1985) (declining to extend a pre-judgment First Amendment right of access to summary judgment documents).

reach the First Amendment right of access and instead "confin[ing] our analysis to the common law"); *Littlejohn*, 851 F.2d at 677 n.8 (declining to reach the First Amendment right of access because "[w]e can dispose of most of the parties' contentions without reaching the constitutional issue"); *Bank of Am.*, 800 F.2d at 343 (ruling that the common law right of access is applicable and declining to decide whether a right to access certain records "might also be grounded on the First Amendment").

Although the constitutional issue is an interesting one, we again decline to define the parameters of the First Amendment right in a case where the common law right affords sufficient protection. Indeed, at oral argument counsel for the plans agreed that we need not reach the First Amendment issue if unsealing is required under the common law right of access. *See* Tr. of Oral Arg. 3:24–4:13, (Mar. 6, 2019); *see also In re Cendant Corp.*, 260 F.3d at 198 n.13 (citing *Hagans v. Lavine*, 415 U.S. 528, 547 (1974), for the proposition that "a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available").

If on remand the District Court concludes that any of the sealed documents merits continued confidentiality under the common law right of access, then the Court should also consider the parties' arguments regarding the First Amendment

right of public access.[16]  At this juncture, we discern no need to express an opinion as to whether the First Amendment right of public access extends to summary judgment documents.

## IV.

Instead of applying the common law right of access, the District Court assessed GSK's motions for continued confidentiality using the rule applicable to protective orders. Because the District Court should conduct the required document-by-document review under the correct legal standard in the first instance, we will vacate and remand the May Sealing Order as well as the July Sealing Order.

---

[16] Because we do not reach the First Amendment issue, we decline to address GSK's arguments that the plans lack Article III standing to assert First Amendment claims, or that they have partially waived these claims.

RESTREPO, *Circuit Judge*, concurring in part and dissenting in part.

I join the majority opinion in its entirety, with the exception of Part III.E. In that portion of the opinion, the majority, as a matter of constitutional avoidance, "decline[s] to define the parameters of the First Amendment" because, in the majority's view, "the common law right affords sufficient protection" in this case. I depart from the majority because, in my view, the Court should address the First Amendment issues raised by the plans. I write separately to express my view that the doctrine of constitutional avoidance is inapplicable to the facts of this case and that the First Amendment right of public access extends to documents submitted in connection with motions for summary judgment.

## I.

The Court could reach the First Amendment issues in this case without running afoul of the doctrine of constitutional avoidance. The Supreme Court indeed has counseled that federal courts "should not decide federal constitutional questions where a dispositive nonconstitutional ground is available," but, in my view, the majority has not given proper weight to the key modifier in that clause—"dispositive." *Hagans v. Lavine*, 415 U.S. 528, 547 (1974). In other words, federal courts should avoid deciding constitutional questions only when there is a nonconstitutional ground that "bring[s] about a final determination." *Dispositive*, Black's Law Dictionary (10th ed. 2014). While I agree with the majority that this case should be remanded for the District Court to apply the appropriate standard under the common law right of access, such a holding is not *dispositive*: we cannot be certain that "the common law right affords sufficient protection" in

this case because the District Court will make that determination on a document-by-document basis on remand.

The majority appears to acknowledge that our holding is not a final determination on the merits of this matter insofar as the majority recognizes that this litigation will continue, and the Court subsequently will be required to address the First Amendment issues, if the District Court finds on remand that certain of the sealed documents merit continued confidentiality under the more lenient common law right of access standard. In such an event, as one of our sister circuits has recognized, "[e]ach passing day" between the District Court's decision to maintain the confidentiality of a sealed document and this Court's eventual adjudication of the First Amendment issues "may constitute a separate and cognizable infringement of the First Amendment." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) (quoting *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994)). Thus, given the possibility that our present avoidance of the First Amendment issues may result in a potentially continual constitutional violation if, on remand, the District Court does not unseal particular documents, our holding cannot be fairly characterized as "dispositive." For that reason, we should address the First Amendment issues raised by the plans.

The cases cited by the majority—in which this Court utilized only the common law right of access standard, rather than the more rigorous First Amendment standard—do not persuade me otherwise. In all but one of the cited cases, this Court definitively held that the documents in question should be unsealed pursuant to the common law right of access, leaving no room for doubt as to whether it might later become necessary to apply the more rigorous First Amendment

2

standard to unseal such documents.  *See In re Cendant Corp.*, 260 F.3d 183, 201 (3d Cir. 2001) (directing "the District Court [to] enter an order unsealing all sealed bids and documents in the record"); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 665 (3d Cir. 1991) (denying a stay pending appeal of the district court's order "unsealing the material filed in connection with Westinghouse's motion for summary judgment"); *Littlejohn v. Bic Corp.*, 851 F.2d 673, 687 (3d Cir. 1988) (affirming "the district court['s] order granting [the *Philadelphia Inquirer*] access to the judicial records"); *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 346 (3d Cir. 1986) (remanding to the district court with the direction to enter an order unsealing documents relating to a settlement agreement). Unlike this case, the Court, in each of the above-cited cases, did not remand to the district court to apply the appropriate standard under the common law right of access; rather, in each of the above-cited cases, the Court's holding was *dispositive* of all the issues, and thus it was proper for the Court to decline to adjudicate First Amendment claims.  Further, in the remaining case cited by the majority, the appellant "d[id] not rely on the First Amendment as the basis for his claimed right of access to the discovery material," and thus constitutional avoidance was not at issue. *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 162 (3d Cir. 1993).  In contrast, the plans and amici explicitly raised First Amendment issues in this case.

For the reasons stated above, I respectfully disagree with the majority's decision not to address the First Amendment issues raised by the plans in this case, and I would join our two sister circuits that took up this constitutional issue when it was presented to them in a similar posture.  *See Lugosch*, 435 F.3d at 124 ("[W]e may not avoid the question

3

of whether a First Amendment presumption of access also exists, for the Newspapers ask us to impose the higher constitutional burden in requiring disclosure."); *accord Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).  As a result of the Court's holding, the adjudication of the First Amendment issues hinges on the outcome of the District Court's fact-finding on remand, and, in the meantime, constitutional rights potentially are being abridged on a continual basis.  Such a result, in my view, is not dispositive of all the issues in this case, and therefore the doctrine of constitutional avoidance does not bar us from reviewing the First Amendment issues raised by the plans.

## II.

Having determined that the Court should address the First Amendment issues raised by the plans,[1] I would join the

---

[1] As an ancillary matter, GSK's argument regarding the plans' lack of "standing" is something of a misnomer.  This is not a case in which a named plaintiff failed to demonstrate Article III standing to bring the substantive claim in a complaint on behalf of a putative class; it is undisputed that the District Court has jurisdiction over the underlying matter.  Rather, this appeal arises out of the District Court's grant of two motions filed by GSK in the underlying matter to preserve the confidentiality of the documents submitted in connection with its motion for summary judgment.  The plans opposed both of these motions and, either explicitly or through citation to case law, raised (and, consequently, preserved) arguments with respect to the First Amendment right of public access.  The plans—as the named plaintiffs in a putative class action—are required to "fairly and adequately protect the interests of

4

Second and Fourth Circuits in holding that the First Amendment right of public access extends to documents filed in connection with motions for summary judgment. *See Lugosch*, 435 F.3d at 124; *Rushford*, 846 F.2d at 253.

This Court previously has held that "the First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings"— specifically, civil trials. *Westinghouse*, 949 F.2d at 659 (citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984)). Since the Court first recognized a First Amendment right of public access to civil trials in *Publicker*, 733 F.2d 1059, however, summary judgment has played an increasingly prominent role in federal civil litigation. As one distinguished jurist has noted, "[t]he expanding federal caseload has

the class," Fed. R. Civ. P. 23(a)(4), in order "to ensure that absentees' interests are fully pursued," *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996). The obligation to protect the interests of the class undoubtedly extends to opposing motions—and appealing orders—that adversely affect the interests of absentee class members, whose interests are at issue in a "peculiar" way when litigation centers on the right of access. *See Cendant*, 260 F.3d at 194 (holding that the "right of access should be applied . . . with particular strictness" due to "the peculiar posture of class actions whereby some members of the public are also parties to the class action"). To accept GSK's argument that the plans do not have "standing" to raise issues with respect to the First Amendment rights of absentee putative class members—who received notice of neither GSK's motions nor the District Court's orders and whose rights are peculiarly at issue—would be to contravene both the letter and spirit of Rule 23.

5

contributed to a drift in many areas of federal litigation toward substituting summary judgment for trial." *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997) (Posner, C.J.). This view has been echoed by commentators. *See, e.g.*, Samuel Issacharoff & George Loewenstein, *Second Thoughts About Summary Judgment*, 100 Yale L.J. 73, 89 (1990) ("There is evidence . . . that summary judgment has moved beyond its originally intended role as a guarantor of the existence of material issues to be resolved at trial and has been transformed into a mechanism to assess plaintiff's likelihood of prevailing at trial."). Statistical analysis performed by the Federal Judicial Center supports these commentators' claims and confirms that district courts are granting motions for summary judgment more frequently: between 1975 and 2000, "the rate of cases with [summary judgment] motions granted in whole or in part, and the rate at which cases were terminated by summary judgment, doubled." Joe S. Cecil et al., Fed. Judicial Ctr., *Trends in Summary Judgment Practice: 1975–2000*, at 20 (2007), https://www.uscourts.gov/sites/default/files/summary_judgment_1975-2000.pdf.

Given the increasing frequency with which district courts utilize summary judgment to resolve federal civil litigation, in my view, the First Amendment public right of access that this Court extended to "records of civil proceedings," *Westinghouse*, 949 F.2d at 659 (citing *Publicker*, 733 F.2d at 1070), also extends to documents submitted in connection with motions for summary judgment. As the Fourth Circuit recognized, "summary judgment adjudicates substantive rights and serves as a substitute for a trial," and thus there is no principled basis to hold that the First Amendment right of public access extends to records of civil trials, but not records submitted in connection with motions for

6

summary judgment. *Rushford*, 846 F.2d at 252. Further, much of the Supreme Court's rationale in *Press-Enterprise Co. v. Superior Court (Press-Enterprise II)*, 478 U.S. 1 (1986)—a seminal right-of-access case in which the Supreme Court held that the First Amendment right of public access extends not only to criminal trials, but also to preliminary hearings in criminal cases—applies with equal force to summary judgment proceedings. Because of the modern trend toward resolving civil litigation through motions for summary judgment, in many cases, the summary-judgment stage "is often the final and most important step" of civil litigation. *Id.* at 12. Further, given that motions for summary judgment are adjudicated solely by judges, "the absence of a jury, long recognized as 'an inestimable safeguard against . . . the compl[ia]nt, biased, or eccentric judge,' . . . makes the importance of public access to [summary judgment proceedings] even more significant." *Id.* at 12–13 (citations omitted) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968)).

For the reasons stated above, the Court should hold that the First Amendment right of public access extends to documents submitted in connection with motions for summary judgment. In light of the contemporary trend toward disposing of civil cases through summary judgment, the public should have a qualified right to view the documents submitted by parties in connection with motions for summary judgment. As the Supreme Court has stated, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980). The public can only have confidence in the propriety of summary judgment procedure—which plays an increasingly important role in civil litigation—if the documents that form

the bases of district courts' decisions to grant summary judgment are open for review and inspection, rather than shielded from public scrutiny.

### III.

In sum, I respectfully disagree with the majority's application of the doctrine of constitutional avoidance, which should only be invoked by a federal court when the court can decide a case on a "*dispositive* nonconstitutional ground." *Hagans*, 415 U.S. at 547 (emphasis added). The doctrine of constitutional avoidance is prudential in nature, yet its invocation in this case may lead to the imprudent result of piecemeal litigation while constitutional rights potentially are being violated on a continual basis. Therefore, it is not only appropriate, but also *necessary*, for the Court to address the First Amendment issues raised by the plans at this juncture, and I would resolve the First Amendment issues in favor of transparency and broader public access to the federal courts.