NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1565
_____

JACQUELINE HAMPSHIRE;
CHRISTIAN JABLONSKI,
                                        Appellants

v.

BRANVILL BARD; JOANNE STRAUSS; PHILADELPHIA
HOUSING AUTHORITY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cv-04423)
District Judge:  Hon. Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
November 12, 2019

Before:  JORDAN, SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: November 25, 2019)
_____

OPINION[*]
_____

JORDAN, *Circuit Judge*.

The plaintiffs, two officers of the Philadelphia Housing Administration (PHA),

appeal the entry of summary judgment against them on their race and gender

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

discrimination claims. They also appeal a protective order entered by the District Court. We will affirm.

## I. BACKGROUND

Jacqueline Hampshire, a white female, and Christian Jablonski, a white male, (together, "the plaintiffs") were law enforcement officers in the PHA's police force. At approximately 1:15 a.m. on March 10, 2016, they were on duty, sitting in a police vehicle in a parking lot outside their jurisdiction, completing paperwork. Officer Jablonski was in the driver's seat and Officer Hampshire was the recorder, or the officer responsible for completing necessary paperwork. Over the radio, they heard a notice that a Philadelphia police department officer had attempted to stop a speeding vehicle in their area. The vehicle passed the plaintiffs, and Officer Jablonski immediately pulled out of the parking lot after it, activating his car's emergency lights and sirens. The plaintiffs did not report their pursuit, nor did they later add it to their log. They chased the vehicle at high speeds for approximately 11 blocks. The plaintiffs contend that the speed estimated by the GPS tracker, 85 mph, is unreliable, but they do not contest that they were driving at high speeds in pursuit of the vehicle. When they lost sight of it, they pulled onto a side street. Two blocks from where they turned, the vehicle they had been pursuing hit several light posts and crashed into a building. It caught fire, and the driver died.

Shortly thereafter, the plaintiffs took their log to their supervisor, Sergeant Evans.[1] They told him that they had attempted to stop a vehicle but provided no further details.

---

[1] Sergeant Evans was suspended and demoted for neglect of duty and failure to supervise, as a result of this incident.

When the Philadelphia Police Department learned of the plaintiffs' involvement in the chase, they asked for an opportunity to question them. Officer Jablonski answered their questions; Officer Hampshire did not.

When PHA Chief Branvill Bard heard of the incident, he suspended the plaintiffs for ten days with a recommendation for discharge. They were called into individual meetings with Chief Bard, their union representative, PHA Chief Inspector Joseph Marker, and a Human Resources representative, Joanne Strauss. They were read their notices of suspension and asked if they had any questions. Neither asked any questions.

Four days later, when he realized the investigation would take longer than 10 days, Chief Bard reinstated the plaintiffs and placed them on administrative duty pending the outcome of the internal investigation. The investigators finished their report on April 12, 2016 and determined that the plaintiffs' conduct on March 10, 2016 violated several department policies.

On June 6, 2016, the plaintiffs were again called into individual meetings with Chief Bard, Strauss, and their union representative. Again, they were permitted to ask questions but did not do so. They were each given another notice of suspension without pay for ten days with the recommendation for discharge based on the violation of PHA policies. The notice of suspension lists the violations as (1) neglect of duty for failing to comply with the Chief's orders, (2) neglect of duty for failure to properly patrol area of responsibility, (3) motor vehicle violations for failure to follow departmental procedures involving pursuit, and (4) safe operation of police vehicles.

The next day, a union representative filed a grievance for them. A hearing was held the following month and the plaintiffs were permitted to attend, though they did not do so. Several union representatives were there on their behalf. On October 13, 2016, Strauss, acting as grievance officer, upheld the terminations. The plaintiffs were terminated that day and received termination letters. A union representative filed a request for arbitration. Following an arbitration hearing, the arbitrator upheld the plaintiffs' terminations.

The plaintiffs next filed their complaint in this case. During discovery, they sought personnel files of certain third parties, in their quest to find comparators to show discrimination. The PHA sought a confidentiality agreement for the internal disciplinary report of a third party. The plaintiffs objected. As a result, the PHA sought a protective order, which the District Court granted.

At the close of discovery, the District Court granted summary judgment in favor of the PHA and the two individual defendants, Bard and Strauss.

## II. DISCUSSION[2]

The plaintiffs contend that the District Court abused its discretion when it granted a protective order over PHA personnel files. They also argue that the District Court

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of a motion for a protective order for an abuse of discretion. *Shingara v. Skiles*, 420 F.3d 301, 305 (3d Cir. 2005). We review the District Court's grant of summary judgment *de novo* and "view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010) (citation omitted). We also review the due process claim *de novo*. *Bennett v.*

4

should not have entered summary judgment because there were disputed facts, and that the Court improperly determined there were no comparators. All of their arguments are unpersuasive.

## A. Protective Order

The plaintiffs object to the protective order regarding the personnel files of a third party. They claim that the District Court should have applied the public right of access standard, not the Rule 26 standard in deciding PHA's motion.[3] *See In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 924 F.3d 662 (3d Cir. 2019). We disagree. The PHA moved for a protective order in the context of the exchange of documents between parties, not in the context of filing the documents with the Court. Under such circumstances, the appropriate standard is the Rule 26(c) standard we articulated in *Pansy*

*Superintendent Graterford SCI*, 886 F.3d 268, 273 (3d Cir. 2018).

[3] The common law right of access standard is a "more rigorous" standard than the Rule 26 standard. *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 924 F.3d 662, 670 (3d Cir. 2019). When deciding whether to issue a protective order under Rule 26(c), a court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Id.* at 671 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994)). In addition, the party seeking the order "must demonstrate good cause," a multi-factor analysis considering privacy interests, why the party is seeking the information, the tendency toward embarrassment, public health and safety considerations, fairness and efficiency, whether the party benefitting from the order is a public entity, and whether the case involves important public issues. *Id.* (quoting *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). In contrast, under the common law right of public access to the courts, there is a presumption in favor of disclosure, so, to deny public access, a court "must articulate 'the compelling, countervailing interests to be protected,' make 'specific findings on the record concerning the effects of disclosure, and provide[ ] an opportunity for interested third parties to be heard.'" *Id.* at 672-73 (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)) (alteration in original).

5

*v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), not the public right of access standard. *In re Avandia*, 924 F.3d at 670. The District Court correctly applied the law and did not abuse its discretion, so we will affirm its grant of the protective order.

**B.     Summary Judgment**

The plaintiffs also seek review of the District Court's grant of summary judgment against them. They contend that the Court improperly decided disputed material facts in favor of the defendants and improperly assessed the sufficiency of comparator evidence. Again, we disagree.

Under Rule 56, a court may only grant summary judgment on a claim or defense if "there is no genuine dispute as to any material fact[.]" Fed. R. Civ. P. 56(a). The nonmoving party may oppose summary judgment "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make [its] showing[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted).

The plaintiffs argue on appeal that the District Court inappropriately usurped the role of the jury by deciding material facts, including the sufficiency of comparators. But none of the disputed facts the plaintiffs identify are material because none of them, even

6

if construed in favor of the plaintiffs, support a reasonable inference that either plaintiff was terminated on the basis of race or gender discrimination.[4]

The plaintiffs next contend that it was not in the District Court's purview to decide whether the comparators they put forth were similarly situated. While it is true that the sufficiency of evidence is typically an issue of fact for the jury, a court may nonetheless grant summary judgment if no reasonable jury could find that the individuals identified by the plaintiffs were similarly situated. *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004) ("As a general rule, whether individuals are similarly situated is a factual question for the jury. However, a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met.") (citation omitted). That is the case here. No reasonable jury

---

[4] For example, the plaintiffs argue that the District Court erred when it decided that PHA Directive O-11, which prohibits vehicle pursuits except in certain circumstances not present here, was in effect on the date of the pursuit. If the Directive was not in effect, they argue, that is evidence that the reasons for their firing were a pretext for discrimination. That Directive, however, is but one of four bases for the plaintiffs' firing, and the plaintiffs cite no evidence that the other four bases would not support their termination. Equally significant, even if the plaintiffs were terminated pursuant to a not-yet-enacted Directive, that fact, standing alone or considered in context with the entire record, does not support an inference of unlawful discrimination. Indeed, while the parties disagree whether the Directive was in place on March 10, 2016, there is no dispute that, if it was not in place, that was solely due to an administrative error. At most, the plaintiffs' pretext argument shows they were fired for a bad or mistaken reason, but a reason nevertheless devoid of any discernable relation to their race or gender. Therefore, the plaintiffs' arguments regarding the Directive fail to raise a triable issue of fact warranting denial of summary judgment.

7

could find that the comparators the plaintiffs identified were similarly situated, so summary judgment was appropriate.[5]

## C.  Due Process claims

Finally, the plaintiffs also claim that they were denied due process in the termination process.  They claim they were not allowed a hearing prior to their terminations, in violation of *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).  That, however, is not supported by the record, which shows that they twice had individual meetings with the Chief, with a union representative present, and they were informed there of the reasons for their suspension and recommendation for termination. Although the plaintiffs chose not to ask questions at those meetings, they could have done so.  The plaintiffs were thus provided sufficient notice of termination and a constitutionally adequate opportunity to be heard.

## III.  CONCLUSION

For the foregoing reasons, we will affirm the orders of the District Court.

---

[5] The record shows that none of the comparators was similarly situated to the plaintiffs.  First, the plaintiffs named their supervisor, who, based on his position alone, is not similarly situated.  Another comparator they identified, Officer Brooks, is not similarly situated because she engaged in conduct that differs fundamentally from the plaintiffs' high-speed chase.  Officer Brooks was in her vehicle when she saw a car commit a traffic violation.  She activated the lights on her vehicle, but a few seconds after, the car in question crashed into a parked car.  Two men exited the car on foot, so Officer Brooks also exited her vehicle and pursued the men on foot.  The third situation that the plaintiffs offer as similar involved two plaintiffs engaging in a vehicle pursuit. The PHA, however, was unaware of the pursuit until after one of the officers no longer worked for the PHA.  The other officer, a black male, was terminated.